DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Michael Moneypenny, Sr., appeals from the decision of the Wayne County Municipal Court. We reverse.
 I. {¶ 2} Mr. Moneypenny, Sr. is the guarantor of a lease for property located at 124-128 East Market Street, in Orville, Ohio, which is leased by his son, Michael Moneypenny, Jr. ("Michael, Jr."). The premises opened to the public in early 2002 as Orville's All-American Instant Bingo ("Bingo"). Rent on the property was paid by Michael, Jr. and later by Ty Maley ("Maley"), manager of Bingo and nephew to Mr. Moneypenny, Sr.
 {¶ 3} In the process of investigating Bingo as a possible illegal gambling operation, an investigator with the Ohio Attorney General's office (the "AG"), Angel Bowers ("Bowers"), visited the premises and found approximately 15 video machines, containers of instant tickets, a store operator, and a letter indicating Bingo was operating as a charitable organization. On November 1, 2002, the day following her initial visit, Bowers returned to the store with several officers who executed a search warrant and seized 15 machines and various documents.
 {¶ 4} While the police were in the store, Maley called Mr. Moneypenny, Sr., who arrived and denied any involvement with Bingo or the machines.
 {¶ 5} Mr. Moneypenny, Sr., Michael, Jr., and Maley were each charged separately with one count of gambling, in violation of R.C. 2915.02, and one count of operating a gambling house, in violation of R.C. 2915.03, both first-degree misdemeanors. Mr. Moneypenny, Sr. pled not guilty to all charges.
 {¶ 6} Following a one-day jury trial, Mr. Moneypenny, Sr. was convicted of both counts. Mr. Moneypenny, Sr. filed a motion to set aside the verdict and a motion for a new trial, both of which the trial court denied. Mr. Moneypenny, Sr. was sentenced accordingly. This appeal followed.
 {¶ 7} Mr. Moneypenny, Sr. timely appealed, asserting five assignments of error for review. As the fourth assignment of error is dispositive of this case, we will address it first.
 II. A. Fourth Assignment of Error
"The trial court erred in denying appellant moneypenny's motions [sic] for acquittal."
 {¶ 8} In his fourth assignment of error, Mr. Moneypenny, Sr. asserts that the trial court erred in denying his motion for acquittal, claiming that the evidence was insufficient to sustain a conviction on both charges. We agree.
 {¶ 9} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, paragraph one of the syllabus. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 10} "The test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Leggett (Oct. 29, 1997), 9th Dist. No. 18303. We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. "In essence, sufficiency is a test of adequacy." State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52.
 {¶ 11} On the charge of gambling, the State was required to prove beyond a reasonable doubt that Mr. Moneypenny, Sr. did "[e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[,]" as set forth in R.C. 2915.02(A)(2), or that he did, with the purpose to violate R.C. 2915.02(A)(2), "acquire, possess, control, or operate any gambling device[,]" as set forth in R.C. 2915.02(A)(5). To find Mr. Moneypenny, Sr. guilty of operating a gambling house, the State was required to prove beyond a reasonable doubt that he violated R.C. 2915.03(A), which states:
"(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:
"(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code; [or]
"(2) Recklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code."
 {¶ 12} The State offered testimony from agents who performed the search at Bingo. Both Bowers and Gary Diehl ("Diehl"), also an investigator with the AG, testified that Maley was the sole operator of Bingo when they visited the store. Diehl also offered testimony that Mr. Moneypenny, Sr. was registered with the AG as a Professional Solicitor, a person who contracts with charities to raise money for them. Diehl attested that an Internal Revenue Service certificate was posted at the store indicating that proceeds from the store went to a charitable organization, Tiger Lillies Softball. Diehl admitted, however, that he never contacted Tiger Lillies Softball to determine whether the funds raised by the store were distributed to the charity. Diehl acknowledged that corporations recognized by the Internal Revenue Service as a 501(c)(3) organizations are required to keep a tracking record to show how much money they take in, pay out for business expenses, and distribute to charity. However, the State elicited no testimony as to whether the store kept a tracking record or, if they did, what the record showed.
 {¶ 13} Officer Warren Alan Caskey ("Caskey") of the Orville Police Department testified that his only communication with Mr. Moneypenny, Sr. was when Mr. Moneypenny, Sr. arrived while the raid was taking place. Caskey admitted that even though one could see right through the store front from the street, he had never before seen Mr. Moneypenny, Sr. at the store. Caskey further testified about documents obtained during the search, including bank records and the lease for the gaming machines. Caskey admitted that the bank records indicated that Maley alone had authority to sign for checks. The leasing document introduced to the court was mailed to the attention of Michael, Jr., and demonstrated that the lessor of the machines was Moneypenny Financial Services.
 {¶ 14} The State's final witness was William Riedthaler, director of marketing for a Nevada corporation with an office in Rocky River, Ohio. He testified on the mechanical operation of video gaming machines work, but offered no evidence specific to Mr. Moneypenny, Sr. or the operation of the store.
 {¶ 15} By offering the lease itself into evidence and through the testimony of the lessor of the premises, John Robinson ("Robinson"), the State established that Mr. Moneypenny, Sr. signed the lease for the premises as a guarantor. However, the State offered no evidence that Mr. Moneypenny Sr.'s connection with the business was anything more than a guarantor on the lease.
 {¶ 16} The State tried to establish a link between Moneypenny Financial Services and Mr. Moneypenny, Sr. in order to prove an association between the gaming machines and Mr. Moneypenny, Sr. However, neither the lease itself nor the testimony of Caskey linked Mr. Moneypenny, Sr. to the gaming machines or to Moneypenny Financial Services. The leasing document for the machines was directed to Michael, Jr., and did not in any way implicate Mr. Moneypenny, Sr. There was mere conjecture based on the fact Mr. Moneypenny, Sr. is a businessman and shares a last name with the financial institution.
 {¶ 17} The State also tried to establish Mr. Moneypenny Sr.'s involvement with Bingo based upon the fact that he arrived at Bingo during the raid. The State argued that one could conclude that, despite his denial of any knowledge of the machines or the business, Mr. Moneypenny, Sr. was responsible for Bingo based on the fact that he arrived at the property as the police were conducting the search. We cannot find, however, that a rational trier of fact could have so concluded, beyond a reasonable doubt. To the contrary, on the basis of Caskey's testimony, one could surmise that Mr. Moneypenny, Sr. arrived because his nephew called him at a stressful time.
 {¶ 18} Mr. Moneypenny, Sr.'s sole witness, John Robinson, testified as to his dealings with Mr. Moneypenny, Sr. and Michael, Jr. on the lease for the property on which Bingo is operated. Robinson testified that he spent three to four months negotiating with Michael, Jr. for the lease. He attested that it was not until Robinson requested a co-signer, because of Michael, Jr.'s youth, that he met Mr. Moneypenny, Sr. Additionally, Robinson testified that he understood Michael, Jr. was the lessee, and that Michael, Jr. was the person who paid all of the rent checks and remodeled the building. Robinson stated that Maley was the one who paid the rent after he was hired. He also acknowledged that he had no further involvement with Mr. Moneypenny, Sr. subsequent to entering into the lease agreement because it was either Michael, Jr. or Maley who took care of the rent and maintenance of the building.
 {¶ 19} We find that the State failed to establish that Mr. Moneypenny, Sr. operated the business, occupied the premises, or acquired the gaming machines. See R.C. 2915.03. The fact that Mr. Moneypenny, Sr. is a guarantor on the lease does make him responsible for missed payments, but does not demonstrate that he was involved directly or indirectly with activities occurring on the premises. Furthermore, guarantor status does not make Mr. Moneypenny, Sr. an operator of the business or responsible for the actions of the person for whom he co-signed.
 {¶ 20} In construing the evidence in a light most favorable to the State, we do not find that reasonable minds could conclude, beyond a reasonable doubt, that Mr. Moneypenny, Sr. established, promoted, operated, or knowingly engaged in gambling activities, that he acquired, possessed, controlled, or operated a gambling device, or that, as an operator of a gambling house, he occupied or recklessly permitted someone else to occupy the premises for the purpose of illegal gambling. See Wolfe,
51 Ohio App.3d at paragraph one of the syllabus; Leggett, supra; R.C. 2915.02; R.C. 2915.03.
 {¶ 21} In light of the foregoing, we conclude that there is insufficient evidence in the record to convict Mr. Moneypenny, Sr. of gambling and operating a gambling house. See Thompkins,78 Ohio St.3d at 386; Crim.R. 29(A). Accordingly, Mr. Moneypenny, Sr.'s fourth assignment of error is sustained.
 B. First Assignment of Error
"The trial court erred by providng erroneous, ambiguous and misleading jury instructions and by omitting instruction on critical elements of the offens charged."
 Second Assignment of Error
"The trial court erred in admitting evidence of appellant moneypenny's professional solicitors license."
 Third Assignment of Error
"The trial court erred in admitting the state's expert's opinions on the ultimate issues for the jury's determination without the proper foundation."
 Fifth Assignment of Error
"Appellant moneypenny was denied the effective assistance of counsel[.]"
 {¶ 22} In these assignments of error, Mr. Moneypenny, Sr. argues that he was denied effective assistance of counsel, that the trial court erred in its jury instructions, and that the trial court erroneously admitted certain evidence and witness testimony. Due to our disposition of Mr. Moneypenny, Sr.'s fourth assignment of error, we need not reach the merits of these assignments of error, as they are now rendered moot. See App.R. 12(A)(1)(c).
 III. {¶ 23} Mr. Moneypenny, Sr.'s fourth assignment of error is sustained. The remaining assignments of error are not addressed, as they have been rendered moot. Mr. Moneypenny, Sr.'s convictions for gambling and operating a gambling house are reversed, and his sentence is hereby vacated.
Judgment reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Carr, P.J., Whitmore, J., concur.