DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant, Kenneth E. Smith, appeals from the decision of the Akron Municipal Court finding him guilty of one count of carrying a weapon. We affirm.
 {¶ 2} On October 17, 2006, Defendant was tried before a jury on the following charges: carrying a weapon, a third degree misdemeanor in violation of Akron Municipal Code Section 137.02A; obstructing official business, a second degree misdemeanor in violation of Akron Municipal Code Section 136.11; and littering, a third degree misdemeanor in violation of Akron Municipal Code Section 95.03. One additional charge, possession of drugs in violation of Akron *Page 2 
Municipal Code Section 138.10C1, was dropped by the prosecution prior to trial. The jury found Defendant guilty of carrying a weapon, and not guilty of littering and obstructing official business.
 {¶ 3} Each of the above charges arose from an incident on September 10, 2006, in which Defendant called the police to investigate a man who was unresponsive and lying in Defendant's front yard. Defendant proceeded outside after having called the police, taking with him a baseball bat. When the police arrived on his street, Defendant went into the street and began gesturing with the baseball bat and pointing both to the police cruiser and to his house. The police, after an extended discussion with Defendant, finally succeeded in having him put the baseball bat down so that they could approach the house. However, Defendant moved to pick up the bat again after flicking his cigarette onto the arm of one of the officers, burning that officer. The police restrained him with handcuffs and placed him under arrest so that they could safely examine the individual on Defendant's property. Defendant now appeals, raising one assignment of error.
 FIRST ASSIGNMENT OF ERROR "The City of Akron failed to introduce sufficient evidence to prove beyond a reasonable doubt that [Defendant] carried a deadly weapon without proper justification thereby violating [Defendant's] due process rights under the Fourteenth Amendment of the Constitution of the United States."
 {¶ 4} Defendant argues that the evidence presented by the prosecution was insufficient to support the charge of carrying a weapon. *Page 3 
 {¶ 5} "`An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Smith, 9th Dist. No. 23288, 2007-Ohio-1680, at ¶ 3, quoting State v. Galloway (Jan. 31, 2001), 9th Dist. No. 19752. "We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction."State v. Moneypenny, 9th Dist. No. 03CA0061, 2004-Ohio-4060, at ¶ 10, citing State v. Leggett (Oct. 29, 1997), 9th Dist. No. 18303. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 6} The charge of carrying a weapon was brought against Defendant under Akron Municipal Code Section 137.02A, which reads as follows:
 "A. Weapons Generally. Except as otherwise permitted by law, no person shall carry on or about his person a pistol, a knife having a blade two and one-half inches in length or longer, knuckles, a billy or other dangerous ordnance or deadly weapon without proper justification. `Proper justification' includes, but is not limited to, the right of law enforcement officers and other persons specifically authorized by law to be armed within the scope of his or her duties. This section does not apply to a person who is engaged in a lawful business or pursuit justifying possession of such an item and the person did not use or intend to use the item as a weapon. It shall be an affirmative defense to a violation of this section that the defendant was at the time engaged in a lawful business, calling, *Page 4 
employment or occupation and the circumstances in which he was placed justified a prudent man in possessing such a weapon for the defense of his person, property or family."
 {¶ 7} The prosecution offered the testimony of Officer Sinsley, one of the two officers who responded to Defendant's call on September 10. Officer Sinsley testified that he and his partner, Officer Metzger, received the call that there was a "man down" in the front yard at 95 East Tallmadge Avenue. "Man down" calls indicate to officers that there is an unresponsive person in a yard or on a street or sidewalk. The officers did not know who had placed the call or who the resident of the home was, but Officer Sinsley testified that the neighborhood was a known gang and drug area. They were approximately three miles from 95 East Tallmadge Avenue when they received the call, and they proceeded to that location.
 {¶ 8} When the officers were about seven houses from 95 East Tallmadge Avenue, Defendant entered the street "with a baseball bat in his hands jumping up and down, pointing at [the] cruiser." The officers could not tell whether Defendant was pointing out the house or threatening the cruiser, and they did not know whether the "man down" call was a result of an incident with the baseball bat. They stopped about four houses away, and proceeded cautiously toward Defendant, explaining that they needed him to put the bat down for their safety. Defendant was uncooperative. After the officers asked three or four times for Defendant to put the bat down, and after threatening Defendant with jail if he did *Page 5 
not comply, Defendant put the bat down at his feet. Officer Metzger threw the bat farther into the front yard and away from Defendant.
 {¶ 9} The officers entered the front yard toward the "man down," but Defendant, who was between the officers, exclaimed "Fuck this, I'm getting my bat, it's my house." He then flicked his cigarette at Officer Sinsley, burning the officer's arm. He took a step toward the bat, at which time Officer Sinsley handcuffed him and placed him on the steps in the front yard.
 {¶ 10} Based upon the evidence presented, a reasonable jury could have found that Defendant had carried the bat as a weapon and without proper justification. As Officer Sinsley indicated, the bat could have been used as a weapon against the "man down." They perceived Defendant's continued possession of the bat as a threatening gesture because he waved it about as they were approaching him and he refused to acknowledge their repeated requests, warnings and explanations about why he needed to drop the bat. Even when the officers had moved the bat out of Defendant's reach, Defendant attempted to regain possession of the bat, using combative language and flicking his cigarette at Officer Sinsley.
 {¶ 11} The police were already on the scene to investigate the "man down," and, even if Defendant had originally been justified in carrying the bat to confront the perceived danger of an unresponsive man in his front yard, he no longer had a *Page 6 
justification for carrying the bat. Any danger that Defendant perceived would have been confronted by the officers.
 {¶ 12} The evidence presented by the prosecution was sufficient to support a finding by a rational jury that the elements of carrying a weapon had been proven beyond a reasonable doubt. Defendant's first assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 7