DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant appeals from his conviction in the Summit County Court of Common Pleas. A jury found Defendant guilty of one count of illegal manufacture of drugs and one count of illegal assembly or possession of chemicals for the manufacture of drugs, in addition to driving under suspension. We affirm.
 {¶ 2} On March 29, 2006, Defendant drove to a residence at which sheriffs deputies were waiting to execute a search warrant for what they believed to be a methamphetamine lab. Detectives immediately approached Defendant and asked why he had come to the residence. They asked permission to search the large black trash bags Defendant had in the bed of his pickup truck. When they *Page 2 
opened the bags, the detectives found items commonly used in the manufacture of methamphetamine, such as a large quantity of rubber tubing and coffee filters, and empty containers of acetone, lye and gas line antifreeze. The detectives placed Defendant under arrest.
 {¶ 3} On July 27, 2006, after a one-day trial, a jury returned a verdict of guilty on the counts of illegal manufacture of drugs with the enhancement of commission within the vicinity of a juvenile, a violation of R.C. 2925.04(A) and a first degree felony; illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. 2925.041 and a third degree felony; and driving under suspension, a violation of R.C. 4510.11 and a first degree misdemeanor.
 {¶ 4} Defendant timely appeals, raising one assignment of error for our review:
 ASSIGNMENT OF ERROR "[Defendant's] conviction was based on insufficient evidence."
 {¶ 5} Defendant contends that the prosecution produced insufficient evidence to allow the jury to find him guilty beyond a reasonable doubt.
 {¶ 6} We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. State v. Moneypenny, 9th Dist. No. 03CA0061, 2004-Ohio-4060, at ¶ 10, citing State v.Leggett (Oct. 29, 1997), 9th *Page 3 
Dist. No. 18303. "In essence, sufficiency is a test of adequacy."State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Smith, 9th Dist. No. 23288, 2007-Ohio-1680, at ¶ 3, quoting State v. Galloway (Jan. 31, 2001), 9th Dist. No. 19752.
 {¶ 7} In his argument to this court, Defendant does not address the sufficiency of the evidence to support his conviction for driving under suspension. However, we find that the record reflects that testimony elicited from one of the detectives who interviewed Defendant at the scene of the arrest supports this conviction. According to the testimony of the detective, when Defendant was asked for his license, he volunteered that it was under suspension. We proceed to consider the remaining convictions, illegal manufacture in the vicinity of a juvenile, and illegal assembly or possession.
 I. Illegal manufacture in the vicinity of a juvenile {¶ 8} The prosecution elicited the following testimony during Defendant's trial: On March 29, 2006, deputies from the Summit County Sheriff's Department were conducting surveillance and executing an outstanding arrest warrant for the resident at 59 Leicester Drive, Apartment B, in Coventry. At that time, a deputy had occasion to enter the residence, where he discovered the components of a *Page 4 
meth lab. The deputies cordoned off a large area around the residence out of concern for the safety of the neighbors and passers-by. They then waited for a search warrant to search the residence. While they waited, they observed that young children who lived next door to the residence were riding their bikes up and down the street.
 {¶ 9} As detectives awaited the search warrant, Defendant drove through the assembled police cars and into the driveway at 59 Leicester Drive. Deputies immediately approached Defendant and asked why he was there. He responded that he had come to pick up a trailer he had loaned to the occupant of the residence. He told deputies that the truck he was driving belonged to him, and that everything in the vehicle was his. He then gave deputies permission to search the vehicle. One of the deputies approached the truck bed and reached for the two large plastic trash bags, at which time Defendant informed them that he was in the construction business, and did remodeling and cleanup work. He then added that he was often asked to clean up "drugs and drug labs stuff"
 {¶ 10} The contents were double-bagged in opaque black plastic trash bags. Deputies opened the bags and discovered that they contained items generally used in the manufacture of meth. Defendant insisted to deputies that he had picked up the bags at a job site where he had been working and cleaning out a garage, and that there was no dumpster on site where he could dispose of them, so he had put them in his truck. Detective Gowens, who interviewed Defendant at the scene, *Page 5 
asked him where the job site was, and traveled to that location. He found no other evidence that a meth lab had been located on the site.
 {¶ 11} The Sheriff's Department called specially-trained detectives to the site to unpack and inventory the bags in Defendant's truck. In the bags, they found the following: stained rubber tubing, more than twenty empty bottles of Heet or Peak antifreeze, several empty gallon and 32-ounce containers of VM P Naptha (a paint thinner substitute), empty one gallon containers of muriatic acid, empty one gallon containers of acetone, empty one gallon containers of distilled water, an empty container of lye, various bottles with improvised seals made of duct tape, a black funnel, multiple empty bubble packs of Actifed (which contains pseudoephedrine), a broken glass beaker, and numerous coffee filters, some of which contained white residue. The coffee filters and rubber tubing were still wet. In the cab of the truck, detectives found a roll of unused black trash bags identical to those that held the meth components. One detective testified that, just after Defendant had arrived at the house, the neighborhood children were still riding their bikes up and down the street, and actually rode right past Defendant's truck, until detectives could secure the scene and inform the parents about the situation.
 {¶ 12} During the course of the trial, the state admitted eighteen photographs of the contents of the bags in Defendant's truck. It also admitted the inventory list of those contents. Detective Scalise, a thirteen-year veteran of the Summit County Sheriff's Department and a member of the drug task force, *Page 6 
provided extensive testimony regarding the use of the various items found in Defendant's truck bed in manufacturing methamphetamine. The state also played a recorded phone call made by Defendant from the Summit County Jail after he was arrested. The person whom he called was a female named Brenda. In that phone call, Defendant made the following statements:
 {¶ 13} "We got raided. They were already raided and we pulled up." After talking about the arrests of the residents of 59 Leicester Drive, Defendant said, "Most likely they'll get the guy next door too." Brenda asked what he was being charged with, and he responded, "Manufacturing in the vicinity of a minor." He then added, "[The minor was] Little Nicky, Pops' son, but he was already gone out of there by the time we got there." Throughout the phone call, he continued to express familiarity with the residents of the apartment that was raided.
 {¶ 14} He also described what the police did when he pulled up to the house. "Then they asked questions about the trash bags in the back of the truck, and I was like `Shit, man, you know, I pulled them off of the job site at a vacant house. I don't know what the hell is in them.' So they went and searched them and found all that crap.'"
 {¶ 15} Brenda said, "I told you that shit wasn't worth it." Defendant responded, "I know. I'm done with this. I'm done with this totally." She continued, "I cannot believe this. I knew it was going to happen if you kept messin' with this [stuff]." He responded, "I know. I learned my lesson." This *Page 7 
type of exchange happened repeatedly. Brenda later said, "This is not the way you should be spending life, you know?" Defendant replied, "I know. That's why this is coming to an end. I'm not going to fuck around with this shit any more." Again, she said, "I told you to leave the shit alone." Defendant responded, "I know. I know. I didn't listen. My mistake. My bad. Trust me, it won't happen again." Once again, Brenda said, "You're losing everything because of that one thing." Defendant replied, "I know. That's why I said I'm not going to fuck with this any more."
 {¶ 16} Based upon all of the evidence, the jury could reasonably have found Defendant guilty of illegal manufacture, which is defined as follows:
 "(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.
 * * *
 "(C)(3)(b) If the drug involved in the violation is methamphetamine and if the offense was committed in the vicinity of a juvenile, in the vicinity of a school, or on public premises, illegal manufacture of drugs is a felony of the first degree[.]" R.C. 2925.04.
R.C. 2901.22 provides as follows:
 "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Page 8 
RC 2925.01(J) provides the following definition of "manufacture":
 "`Manufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production."
 {¶ 17} Each of the items in Defendant's truck bed was identified by Detective Scalise as having a role in the manufacture of meth. With the items taken together, according to Det. Scalise, virtually the whole process was represented. The coffee filters and rubber tubing were still wet. The tubing had the characteristic reddish-brown stain left by the process of isolating the red phosphorous in the early stages of manufacturing meth. The containers with duct tape over the openings were make-shift receptacles that would contain the distillation process, while the duct tape would hold the tubing in place. The white residue left in the coffee filters was the "junk" that the process of manufacturing meth leaves behind. This collection of items could reasonably be connected with meth manufacture, and to the disposal of the remnants of that process, which would be included in the "activities incident to production."
 {¶ 18} When the detectives reached for the bags in the back of Defendant's truck, he immediately identified them as having a connection to the manufacture of meth. Moreover, in the phone call that the prosecution played for the jury, Defendant said repeatedly that he was aware of the danger of his activities, and he *Page 9 
was through with them. The jury could reasonably have concluded based upon this evidence that Defendant had knowingly engaged in the production of meth.
 {¶ 19} Detective Gowens, another of the deputies on the scene, testified to the presence of children in the area. Given that Defendant had the remainders of meth production in the back of his truck for apparent disposal, which is an activity incident to the production of meth, the jury could also reasonably have concluded that Defendant's activities had amounted to manufacture in the vicinity of children. Therefore, Defendant's conviction on the charge of illegal manufacture is supported by sufficient evidence to allow a jury to find him guilty beyond a reasonable doubt.
 II. Illegal assembly or possession {¶ 20} R.C. 2925.041 reads, in pertinent part, as follows:
 "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.
 "(B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section."
 {¶ 21} In this case, Defendant had not only one particular chemical for the manufacture of meth; he had the remainders of chemicals representing nearly all *Page 10 
of the stages of production. He indicated to detectives that the contents of the bags had something to do with the production of meth, and the prosecution, by presenting the recorded phone call to the jury, demonstrated that Defendant did have knowledge of his actions and of the contents of the bags. Based upon this evidence, the jury could reasonably have concluded that Defendant assembled or possessed the chemicals with the intent to manufacture meth. This evidence was sufficient to support the charge of illegal assembly such that a jury could find Defendant guilty beyond a reasonable doubt.
 {¶ 22} Each of Defendant's convictions was supported by sufficient evidence. The evidence presented supported the jury's finding of guilt beyond a reasonable doubt. Defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 11 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, J. DICKINSON, J. CONCUR *Page 1