DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Willard S. McCarley appeals from his sentence in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} Charlene Puffenbarger filed a paternity suit naming McCarley as the father of her two year old son in November of 1991. Charlene filed the suit to obtain child support from McCarley, who initially denied paternity. McCarley did not wish to pay Charlene child support as he was already paying child support to
Kim Pennington, his former girlfriend and the mother of his six year old son. *Page 2 
McCarley threatened Charlene to drop the suit and stated that he would kill her before paying her child support.
 {¶ 3} On January 20, 1992 at approximately 10:00 a.m., a neighbor came to Charlene's apartment and found her on the couch. Charlene had several scalp lacerations, defensive wounds on her hands, and a leather strap wrapped twice around her neck. The coroner later estimated that Charlene had died sometime between 12:30 and 1:30 a.m. Both of Charlene's two children were at home when her murder occurred.
 {¶ 4} When the police arrived at Charlene's apartment, her three year old son ("D.P.") repeatedly looked at the uniformed officers and stated: "It was him. He hurt mommy." Four days later, he made related statements in the presence of Phyllis Puffenbarger, D.P.'s grandmother. D.P. picked up a toy telephone and said things such as:
 "I am going to get the belt. A policeman. Go kick that window. Phone. Get the stick. I am going to shoot you. * * * A policeman. My mom seen the policeman. * * * What you do that to my mom. * * * Policeman hit my mommy. Put tape on her."
Phyllis testified that D.P. had tears in his eyes and was looking at a picture of his mother when he made the statements. As a result of this incident, Phyllis contacted the police and took D.P. to a child psychologist at their suggestion. Dr. Dawn Lord was able to elicit several similar statements from D.P. during her sessions with him. *Page 3 
 {¶ 5} On December 19, 1995, police officers made a surprise visit to McCarley's home on an unrelated matter. While speaking with McCarley in his garage, police officer Dennis Balogh saw a deputy sheriff's jacket and sheriffs cap strewn across a moving dolly. Officer Balogh remembered D.P.'s statements from years before and confiscated the jacket and cap as contraband.
 {¶ 6} On May 21, 2004, a grand jury indicted McCarley on one count of aggravated murder, a special felony embodied in R.C. 2903.01(A). The jury ultimately found McCarley guilty, but an error during trial caused this Court to reverse the jury's verdict on appeal and remand the case. See State v. McCarley, 9th Dist. No. 22562, 2006-Ohio-1176. McCarley's second trial commenced on January 16, 2007. On January 25, 2007, the jury found McCarley guilty of aggravated murder. He was sentenced to life imprisonment with the possibility of parole in twenty years. McCarley has timely appealed from this verdict, raising five assignments of error. The Court considers the assignments of error out of order to facilitate our review.
 II. ASSIGNMENT OF ERROR III "THE COURT ERRED IN PERMITTING HEARSAY EVIDENCE FROM NUMEROUS WITNESSES, IN DIRECT VIOLATION OF THE DEFENDANT'S RIGHT TO CONFRONT HIS ACCUSERS AND IN VIOLATION OF OHIO RULES OF EVIDENCE INVOLVING HEARSAY." *Page 4 
 {¶ 7} In his third assignment of error, McCarley argues that the trial court improperly admitted various hearsay statements, which violated both the Confrontation Clause and the evidentiary rules. We set forth the applicable standard of review below and then address the statements according to their various bases for admission at trial.
 {¶ 8} A trial court possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. State v. Roberts, 156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621.
Excited Utterances {¶ 9} McCarley argues that the trial court abused its discretion in permitting Phyllis Puffenbarger to testify as to statements that D.P. made four days after Charlene's murder. While playing with a toy telephone at his grandmother's house, D.P. stated:
 "I am going to get the belt. A policeman. Go kick that window. Phone. Get the stick. I am going to shoot you. * * * A policeman. My mom seen the policeman. * * * What you do that to my mom. * * * Policeman hit my mommy. Put tape on her." *Page 5 
Phyllis testified that when D.P. said these things he was looking at a picture of Charlene and had tears in his eyes. By the time of trial, D.P. could not recall the statements that he had made as a three year old. However, the trial court ruled that Phyllis could testify as to D.P.'s statements because they were excited utterances. McCarley insists that the statements were not excited utterances because there was no evidence that Charlene's murder put D.P. under the stress of excitement.
 {¶ 10} Initially, we note that McCarley objected to these statements at trial solely on the basis of hearsay, not the Confrontation Clause. And while the caption of McCarley's third assignment of error references the Clause, he fails to argue that the Clause applied to D.P.'s statements in the body of his brief. Accordingly, we decline to address any potential Confrontation Clause issue that might have arisen specifically as to the statements that D.P. made in the presence Phyllis Puffenbarger. See App.R. 12(A)(2) and 16(A)(7). We only decide whether the trial court properly admitted these statements under the Ohio Rules of Evidence.
 {¶ 11} An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). Excited utterances are deemed trustworthy as the statement is made while the impression of the event is still fresh and intense in the declarant's mind. State v. Taylor (1993), 66 Ohio St.3d 295, 300. We find no abuse of discretion in the court's determination that D.P.'s *Page 6 
statements were excited utterances. See Maurer, 15 Ohio St.3d at 265. D.P. was clearly still under the stress of his mother's murder, which he may have actually witnessed by virtue of being in the apartment when it occurred. Although four days elapsed between the murder and D.P.'s statements, the passage of time is only one factor in an excited utterance analysis. See State v. Powers, 9th Dist. No. 23400,2007-Ohio-2738, at ¶ 8-9 (noting that no precise amount of time governs spontaneity). There is no evidence in the record that D.P., a three year old, fabricated these statements or even made them due to another's influence. Indeed, Phyllis testified that D.P. made the statements spontaneously, quickly, and with tears in his eyes. Accordingly, the trial court did not act unreasonably or arbitrarily in admitting them. See Blakemore, 5 Ohio St.3d at 219.
Forfeitures by Wrongdoing {¶ 12} Next, McCarley argues that the trial court erred in allowing several witnesses to introduce improper character and hearsay evidence on the basis of Evid.R. 804(B)(6). The trial court allowed these witnesses to testify as to what Charlene told them about McCarley before she was murdered. The trial court determined that all of these statements were admissible under Evid.R. 804(B)(6) because McCarley's wrongdoing had prevented Charlene from being a witness in her child support action. We disagree with the trial court's application of the rule.
 {¶ 13} The Ohio Supreme Court recently explained:
 "Under Evid.R. 804(B)(6), a statement offered against a party is not excluded by the hearsay rule if the unavailability of the witness is *Page 7 
due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying. Evid.R. 804(B)(6) was adopted in 2001 and is patterned on Fed.R.Evid. 804(B)(6), which was adopted in 1997. Staff Notes (2001), Evid.R. 804(B)(6). To be admissible under Evid.R. 804(B)(6), the offering party must show (1) that the party engaged in wrongdoing that resulted in the witness's unavailability, and (2) that one purpose was to cause the witness to be unavailable at trial." (Internal quotations omitted.) State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18, at ¶ 84.
In Hand, the defendant was convicted of the aggravated murders of his wife Jill and his friend Walter Welch. During the course of their relationship, Hand hired Welch to kill all three of his wives. Before Welch could kill Jill, however, Hand murdered her himself and also murdered Welch. The Supreme Court held that the trial court did not abuse its discretion in allowing witnesses to testify as to statements that Welch made prior to his death. Id. at ¶ 94. The Court reasoned that neither the evidentiary rules nor the Confrontation Clause bar testimony when the defendant has procured the witness's absence through wrongdoing. Rather, Evid.R. 804(B)(6) permits the introduction of a witness's statements when a wrongdoer's actions were "motivated inpart by a desire to silence the witness." (Emphasis sic.) Id. at ¶ 90, quoting U.S. v. Houlihan (C.A.1 1996), 92 F.3d 1271.
 {¶ 14} According to the State, because McCarley murdered Charlene for the purpose of halting her child support action, her statements would have been admissible in that action as well as in any future action where she might have been a potential witness. Based on the State's reasoning, the trial court found Hand to *Page 8 
be applicable and admitted all of Charlene's statements. We believe that the trial court misinterpreted the Ohio Supreme Court's decision inHand.
 {¶ 15} Hand does not stand for the proposition that whenever a victim is killed that victim's statements will automatically be admissible at the wrongdoer's proceeding or trial pursuant to Evid.R. 804(B)(6). It would be a very strange case indeed if a person murdered another for the purpose of preventing the other from testifying in their own murder trial. The Staff Notes to Rule 804 clarify this point by providing, in relevant part: "[This] rule does not apply to statements of the victim in a homicide prosecution concerning the homicide[.]" 2001 Staff Notes to Evid.R. 804. Thus, when a homicide victim and a Rule 804 witness are the same person, the forfeiture by wrongdoing provision generally cannot be used to admit that person's statements in their own trial. TheHand case was an exception to this general rule because Hand was being simultaneously tried for the aggravated murder of two different individuals. Hand was at least partially motivated to kill Welch for the purpose of preventing Welch from testifying in Jill's murder trial, not Welch's. It just so happened that Welch's and Jill's murder trials were one in the same. Therefore, Welch's statements were introduced in his own trial only because the trials were consolidated.
 {¶ 16} Hand also does not stand for the proposition that the forfeiture by wrongdoing provision eliminates the need to analyze potential statements under other evidentiary rules. Even if a statement is admissible under Evid.R. 804(B)(6), *Page 9 
another evidentiary rule may prevent its introduction at trial. See 2001 Staff Notes to Evid.R. 804(B)(6) (noting that a court still must find that such a statement is relevant and not substantially more prejudicial than probative).
 {¶ 17} McCarley argues that the following statements should not have been introduced at trial: (1) Cheryl Schweickart's testimony that Charlene told her that McCarley had said that "he would never pay [Charlene] any money and that she would be sorry;" (2) Michelle Green's testimony that Charlene told her that McCarley had threatened her and said Charlene "wouldn't live to see the court date;" (3) Francine Clark's testimony that Charlene told her that "she was afraid of him and he had a violent temper;" and (4) Officer John Karabatsos' testimony that Phyllis Puffenbarger told him that Charlene "was afraid of McCarley and that he might have caused Charlene's death. We agree that none of these statements should have been admitted under the guise of Evid.R. 804(B)(6).
 {¶ 18} First, these statements would not have been admissible in Charlene's child support suit against McCarley because they would have been irrelevant and highly prejudicial. See Evid.R. 104 and 403. Charlene only sought monetary support from McCarley, and McCarley's threats of harm would have had no bearing on the court's ability to calculate the child support award. Second, these statements should not have been admitted in Charlene's murder trial because Evid.R. 804(B)(6) does not apply to statements made by the victim in a homicide *Page 10 
prosecution. 2001 Staff Notes to Evid.R. 804. Accordingly, the trial court erred in admitting the statements set forth above under Evid.R. 804(B)(6).
 {¶ 19} We now must consider the effect that this error had on McCarley's trial. A trial court's error in admitting evidence, even if that evidence offended the Confrontation Clause, will not result in a reversal if it proves "harmless beyond a reasonable doubt." State v.Madrigal (2000), 87 Ohio St.3d 378, 388. "This inquiry is not simply a sufficiency of the remaining evidence inquiry; rather, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id.
 {¶ 20} Our review of the record convinces us that the trial court's admission of the aforementioned evidence was harmless. Several other witnesses testified regarding the threats that McCarley made towards Charlene. Pasquale Tambascio testified that he had a conversation with McCarley in late December of 1991 and that McCarley was "upset and angry" because of Charlene's child support action. Tambascio further testified that McCarley told him that "he would kill [Charlene] first before he would pay child support." Charles Kinkaid testified that several years after Charlene's death McCarley told him that he had killed someone and that when you kill someone "you don't remember their eyes." All of these statements were properly admitted because they constituted admissions by a party-opponent. See Evid.R. 801(D)(2) (providing that a party's own statement is admissible when offered against that party). *Page 11 
 {¶ 21} Furthermore, at least one of Charlene's statements was admissible on grounds other than forfeiture. On January 18, 1992, Charlene met with her friend Michelle Green directly after having a fight with McCarley. Green testified that Charlene was "really upset" and said that "[McCarley] threatened me and said that I wouldn't live to see the court date." Although this testimony constitutes double hearsay, such testimony is admissible if each level of the hearsay, standing alone, is admissible. Evid.R. 805. McCarley's statement to Charlene constituted an admission. See Evid.R. 801(D)(2). Additionally, Charlene's statement to Green constituted an excited utterance because she made it directly after the startling event while still under the stress of the event. See Taylor, 66 Ohio St.3d at 300. Hence, this statement also was properly admitted.
 {¶ 22} In light of the foregoing, we cannot say that there is a reasonable possibility that the evidence McCarley complained of contributed to his conviction. See Madrigal, 87 Ohio St.3d at 388. Several of McCarley's statements were properly introduced at trial. The improper statements merely reflected the properly admitted statements. Therefore, while the trial court erred in introducing several statements pursuant to the forfeiture by wrongdoing provision, the errors were harmless. McCarley's third assignment of error is without merit.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN ALLOWING DR. LORD TO TESTIFY REGARDING STATEMENTS MADE TO HER BY THE DECEDENT'S THREE-YEAR-OLD SON, IN VIOLATION *Page 12 
OF APPELLANT'S CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES AGAINST HIM."
 {¶ 23} McCarley argues that the trial court violated his right to confront the witnesses against him by allowing Dr. Lord to testify as to the statements that D.P. made during therapy. Specifically, McCarley argues that: (1) D.P.'s statements were testimonial because D.P. went to see Dr. Lord at the request of the police, and (2) there was no opportunity to cross-examine D.P. at trial because he could not remember the statements that he had made as a three year old. McCarley claims that he suffered material prejudice as a result of Dr. Lord's testimony. We disagree.
 {¶ 24} Initially, we note that we have doubt as to the validity of McCarley's argument that D.P.'s statements to Dr. Lord during therapy were testimonial in nature. See Crawford v. Washington (2004),541 U.S. 36, 68-69 (finding that only testimonial statements are subject to the rigors of the confrontation clause); see, also, State v. Siler,116 Ohio St.3d 39, 2007-Ohio-5637 (holding that a three year old child's statements to police were testimonial because the primary purpose of the questioning was to establish past events for later prosecution). Even assuming it was error to allow Dr. Lord to testify, however, we find the purported error to be harmless. See Crim.R. 52(A); State v. Cutlip, 9th Dist. No. 03CA0118-M, 2004-Ohio-2120, at ¶ 17. On harmless error analysis, we "inquire `whether there is a reasonable possibility that the evidence complained of might have contributed to *Page 13 
the conviction.'" Id., quoting Madrigal, 87 Ohio St.3d at 388, citingChapman v. California (1967), 386 U.S. 18, 23.
 {¶ 25} The record reflects that D.P. made other statements that were similar, if not identical, to the ones that he made to Dr. Lord. Immediately after the police arrived at Charlene's apartment, D.P. pointed to uniformed officers and stated: "It was him. He hurt mommy." Four days later, D.P. made several more statements in the presence of his grandmother Phyllis. Former officer Eric Breiding and Phyllis Puffenbarger both testified as to the contents of these statements. As discussed in the previous assignment of error, the trial court did not abuse its discretion in admitting Phyllis's testimony. While McCarley does not challenge Breiding's testimony on appeal, we note that this testimony was also properly admitted under the excited utterance rule. See Evid.R. 803(2). D.P.'s statements to Breiding were spontaneous and were made much closer in time to the actual murder. See Taylor,66 Ohio St.3d at 300. Accordingly, the trial court did not abuse its discretion in admitting Breiding's testimony.
 {¶ 26} Because D.P.'s statements to Eric Breiding and Phyllis Puffenbarger were properly admitted, D.P.'s statements to Dr. Lord only served as corroborative evidence. McCarley has not shown that Dr. Lord's testimony, rather than D.P.'s other statements, contributed to his conviction. See Madrigal, 87 Ohio St.3d at 388. Consequently, we find that the error, if any, in admitting Dr. Lord's testimony was harmless. McCarley's first assignment of error is without merit. *Page 14 
 ASSIGNMENT OF ERROR II "THE COURT ERRED IN PERMITTING EVIDENCE OF `OTHER ACTS' VIA THE TESTIMONY OF KIMBERLY PENNINGTON IN VIOLATION OF THE OHIO RULES OF EVIDENCE."
 ASSIGNMENT OF ERROR V "THE TRIAL COURT ERRED IN ALLOWING DNA EVIDENCE WITHOUT HOLDING A PRETRIAL EVIDENTIARY HEARING TO DETERMINE THE RELIABILITY AND ADMISSIBILITY OF SUCH EVIDENCE."
 {¶ 27} In his second assignment of error, McCarley argues that the trial court erred in admitting certain other acts testimony. In his fifth assignment of error, McCarley argues that the trial court erred in rejecting his motion in limine and allowing experts to interpose DNA evidence. Because McCarley did not contemporaneously object at trial and waived appellate review of these issues, this Court disagrees.
 {¶ 28} The other acts evidence that McCarley challenges stems from the testimony of Kimberly Pennington, the mother of McCarley's first child. Pennington testified that her pregnancy displeased McCarley and that he "threatened to beat me up until the baby died." She further testified that McCarley did not want to pay child support, told her to get out of his life, and called himself "a bomb with a fuse next to a lit match" who "might do something he was going to regret." McCarley argues that Pennington's testimony constituted improper character evidence, which should have been excluded. *Page 15 
 {¶ 29} McCarley also challenges the DNA evidence, which consisted of samples taken from the belt that Charlene was strangled with. The State's expert used Y-STR DNA testing to separate the female DNA from the male DNA found on the belt and determined that McCarley and his male relatives could not be excluded as a source of the DNA. McCarley seems to argue that the trial court should have excluded the DNA evidence because it was unreliable and irrelevant.
 {¶ 30} "[A] motion in limine does not preserve the record on appeal[;] * * * [a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection * * * when the issue is actually reached during the trial." (Emphasis omitted.)State v. Grubb (1986), 28 Ohio St.3d 199, 203, quoting Palmer, Ohio Rules of Evidence Manual (1984), at 446. The "failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." Goldfuss v. Davidson
(1997), 79 Ohio St.3d 116, 121. Yet, even in the event of a forfeited objection, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court[.]" Id., quoting Crim.R. 52(B). The party claiming error has the burden of arguing plain error on appeal.
 {¶ 31} While he filed motions in limine as to the other acts evidence and the State's DNA evidence, McCarley did not object at trial to the other acts testimony, the DNA testimony, or to the qualifications of the expert who presented the DNA *Page 16 
evidence. Consequently, to raise these issues on appeal McCarley would have had to rely on the doctrine of plain error. See Goldfuss,79 Ohio St.3d at 121. In his brief, however, McCarley failed to argue plain error or otherwise explain why we should delve into these issues for the first time on appeal. See State v. Skinner, 9th Dist. No. 06CA009023,2007-Ohio-5601, at ¶ 28. Accordingly, we decline to address them. McCarley's second and fifth assignments of error are overruled.
 ASSIGNMENT OF ERROR IV "THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW AS TO THE ESSENTIAL ELEMENT OF PRIOR CALCULATION AND DESIGN TO SUSTAIN THE CONVICTION FOR AGGRAVATED MURDER."
 {¶ 32} In his fourth assignment of error, McCarley argues that his aggravated murder conviction was not supported by sufficient evidence. We disagree.
 {¶ 33} We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. State v. Moneypenny, 9th Dist. No. 03CA0061, 2004-Ohio-4060, at ¶ 10, citing State v.Leggett (Oct. 29, 1997), 9th Dist. No. 18303, at *2.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Smith, 9th Dist. No. *Page 17 
23288, 2007-Ohio-1680, at ¶ 3, quoting State v. Galloway (Jan. 31, 2001), 9th Dist. No. 19752, at *3.
"In essence, sufficiency is a test of adequacy." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
 {¶ 34} Aggravated murder is defined in R.C. 2903.01(A), which reads in pertinent part: "No person shall purposely, and with prior calculation and design, cause the death of another[.]" "[T]he phrase `prior calculation and design' * * * indicate[s] studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." State v. Taylor (1997), 78 Ohio St.3d 15, 19. "Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but they must amount to more than momentary deliberation." Taylor v.Mitchell (N.D.Ohio 2003), 296 F.Supp.2d 784, 820. "While a few fleeting moments of deliberation or instantaneous deliberations are inadequate to support prior calculation and design, `a prolonged period of deliberation is [also] unnecessary.'" State v. Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 80, quoting Mitchell,296 F.Supp.2d at 821; State v. Cotton (1978), 56 Ohio St.2d 8, paragraph two of the syllabus.
 {¶ 35} McCarley advances two arguments in support of the proposition that his conviction was based on insufficient evidence: (1) the State failed to set forth any evidence of prior calculation and design because all of McCarley's threats to kill or harm Charlene were inadmissible and thus will not be considered on appeal; and (2) regardless of what this Court considers, all of the evidence points to *Page 18 
Charlene's murder being a crime of passion or anger rather than one of prior calculation and design. We disagree with both arguments.
 {¶ 36} McCarley's first argument fails because several of his threats to kill or harm Charlene were admissible. See discussion, supra. On January 18, 1992, McCarley told Charlene that she "wouldn't live to see [her] court date," and on January 20, 1992 she was found murdered. McCarley also told another witness that "he would kill [Charlene] first before he would pay child support." These statements show that McCarley intended to kill Charlene. Taken in a light most favorable to the prosecution, a rational trier of fact could have determined that these statements were sufficient to show prior calculation and design on McCarley's part. See Smith at ¶ 3. McCarley's first argument is without merit.
 {¶ 37} McCarley's second argument also fails because there is no evidence that he committed Charlene's murder in the heat of passion or anger. Once again, McCarley murdered Charlene after making repeated threats to her life over a period of time. The time that elapsed between his threats and her murder supports the conclusion that the murder was planned rather than spontaneous. See State v. Pierce (1980),64 Ohio St.2d 281, 284 (finding that defendant was not entitled to voluntary manslaughter instruction when he had threatened victim the day before killing her). Therefore, McCarley's second argument is also without merit. McCarley's fourth assignment of error is overruled. *Page 19 
 III. {¶ 38} McCarley's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 1