DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Police found Thomas Sarnescky sitting on a neighbor's property drinking beer as the trailer in which he was living burned. A jury found Mr. Sarnescky guilty of aggravated arson. Mr. Sarnescky has appealed, arguing that (1) his conviction is not supported by sufficient evidence; (2) his conviction is against the manifest weight of the evidence; and (3) the trial court admitted improper testimony that he started another fire in 2006. This Court affirms because (1) Mr. Sarnescky's conviction is supported by sufficient evidence; (2) it is not against the manifest weight of the evidence; and (3) the trial court did not plainly err by permitting testimony about the earlier fire.
 SUFFICIENT EVIDENCE {¶ 2} Mr. Sarnescky's first assignment of error is that the trial court incorrectly denied his motion for acquittal at the close of the State's case. Under Rule 29(A) of the Ohio Rules of *Page 2 
Criminal Procedure, a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction. . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997). This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Sarnescky's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 3} Mr. Sarnescky was convicted of violating Section 2909.02(A)(2) of the Ohio Revised Code. That section provides that "[n]o person, by means of fire or explosion, shall knowingly . . . [c]ause physical harm to any occupied structure." In support of this assignment of error, Mr. Sarnescky has argued that the State only produced circumstantial evidence that he started the fire. Circumstantial evidence, however, has the same probative value as direct evidence. Jenks, 61 Ohio St. 3d 259, at paragraph one of the syllabus.
 {¶ 4} Mr. Sarnescky's brother Dale testified that the trailer was a source of friction between him and his brother. Dale testified that he and Mr. Sarnescky have another brother, Paul, and that their mother died in January 2006. Several years earlier, their mother had signed the trailer over to Dale. At the time of her death, Mr. Sarnescky lived in the trailer with her and held her power of attorney, but Dale paid her bills. Dale testified that, despite his mother's wishes that Paul should have the trailer after her death, Mr. Sarnescky continued to live there. Dale also testified that he offered to sell the trailer to Mr. Sarnescky for $10,000, but Mr. Sarnescky declined. On the day of the fire, Dale had again discussed the trailer with Mr. Sarnescky. Dale recalled that Mr. Sarnescky was not happy about their conversation and that Mr. Sarnescky "felt that I should sign everything over to him and not sell it to him." *Page 3 
 {¶ 5} Other witnesses confirmed that there was bad blood between the brothers. Mr. Sarnescky's next door neighbor, Charles Smith, also spent time with Mr. Sarnescky on the day of the fire. He testified that Mr. Sarnescky was "upset with his brother over a money situation" and that he "had been drinking a lot." Mr. Smith testified that he saw Mr. Sarnescky two or three times during the day and believed that he had successfully calmed him down. On cross-examination, Mr. Smith confirmed that he remembered a previous incident in 2006 in which Mr. Sarnescky had set fire to another structure located on the same property.
 {¶ 6} Another neighbor, Mary States, also spent time with Mr. Sarnescky on the day of the fire. Ms. States confirmed that Mr. Sarnescky seemed to have "a lot on his mind." She testified that he attended her son's birthday party during the afternoon and that he appeared to be "feeling pretty good." She also testified that Mr. Sarnescky mentioned "[t]hat he was going to burn a house or something," but that she thought little of his statement because "he talks. That's all he does." She thought that Mr. Sarnescky left the party around 6:00 p.m. Ms. States' fiancé, Hayward Jarvis, also saw Mr. Sarnescky at the birthday party around 2:00 p.m., but did not see him leave. Mr. Jarvis recalled that he saw Mr. Sarnescky walking toward him along a hedge line during the fire and that he told Mr. Sarnescky that the trailer was ablaze.
 {¶ 7} Sergeant Eric East, of the Springfield Township Police Department, responded to the scene of the fire at 9:35 p.m. When he arrived, the trailer at 2447 Hillstock was "fully engulfed in flames" and Mr. Sarnescky was "sitting in the neighbor's yard . . . by himself drinking a beer." Officer Jason Moore, also of the Springfield Township Police Department, testified that he had responded to "[n]umerous complaints" by Mr. Sarnescky against his brothers, Dale and Paul. He responded to the 2006 fire and recalled that Mr. Sarnescky freely confessed that he started that fire with gasoline, which was also used as an accelerant in the 2007 *Page 4 
fire. Officer Moore interviewed Mr. Sarnescky following the 2007 fire. He testified that Mr. Sarnescky reacted with anger when asked about his family: "He immediately got very agitated. He actually hit the table, almost actually started to stand up and started yelling [`]he ain't going to get it now.[']"
 {¶ 8} Viewing the evidence in the light most favorable to the prosecution, the jury could have inferred that Mr. Sarnescky started the 2007 fire in response to the long-standing disagreement that he had with his brothers about the trailer. Mr. Sarnescky's first assignment of error is overruled.
 MANIFEST WEIGHT {¶ 9} Mr. Sarnescky's second assignment of error is that his conviction is against the manifest weight of the evidence. Specifically, he has argued that the evidence implicated his next door neighbor's girlfriend in the arson instead of him. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 10} Mr. Sarnescky called one witness in his defense. Carol Heathcoat, who lives across the street and slightly diagonally from 2447 Hillstock, testified that, from the vantage point of her couch, she watches her neighbors across the street through her picture window. She said that, on the evening of the fire, she saw an argument between Mr. Sarnescky and Charles Smith's girlfriend, Joyce Angerstein. She recalled that she saw Mr. Sarnescky leave the trailer and walk up the street with a bag in his hand. Ms. Heathcoat testified that Ms. Angerstein and *Page 5 
Mr. Smith's son went onto Mr. Sarnescky's property and entered the trailer while he was gone. She acknowledged, however, that it was not unusual for Ms. Angerstein to enter the trailer to get beer even when Mr. Sarnescky was not at home. Ms. Heathcoat testified that she saw Mr. Sarnescky walking home after the house had burst into flames.
 {¶ 11} Having reviewed and weighed all the evidence that was before the trial court, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice by rejecting Ms. Heathcoat's testimony and inferring from the testimony of the State's witnesses that Mr. Sarnescky started the fire. Mr. Sarnescky's second assignment of error is overruled.
 THE FIRST FIRE {¶ 12} Mr. Sarnescky's third assignment of error is that the trial court incorrectly allowed Charles Smith, Steven Simich, Brian Peterman, and Jason Moore to testify about his prior conviction for arson. Mr. Smith, Mr. Sarnescky's next door neighbor, was the first witness to testify and, before the State questioned any witnesses about the earlier arson case, Mr. Sarnescky's attorney asked Mr. Smith whether he remembered that fire. After Mr. Smith testified in some detail about what he recalled, the other three witnesses mentioned the earlier fire as well. Mr. Simich, a Springfield Township Fire Captain, and Mr. Peterman, an investigator with the Ohio Fire Marshall, explained that the earlier arson on the same property motivated their investigation into the second fire, but their testimony focused on the cause of the fire rather than the identity of the arsonist. Officer Moore testified that he interviewed Mr. Sarnescky after both the 2006 and 2007 fires. He said that, while Mr. Sarnescky had admitted setting the 2006 fire, he had suggested that maybe the 2007 fire was caused by an electrical cord.
 {¶ 13} With respect to these witnesses, Mr. Sarnescky did not preserve any error for appeal by objecting to the testimony at trial, and this Court's review is limited to plain error. See *Page 6 State v. McCarley, 9th Dist. No. 23607, 2008-Ohio-552, at ¶ 30. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v.Wogenstahl, 75 Ohio St. 3d 344, 357 (1996). Even assuming that the testimony was improper, in light of Mr. Sarnescky's lawyer's questioning of Mr. Smith about the earlier fire, this Court cannot conclude that the outcome of Mr. Sarnescky's trial would clearly have been different had Captain Simich, Fire Marshall Peterman, and Officer Moore not testified about the earlier fire. Mr. Sarnescky's third assignment of error is overruled.
 CONCLUSION {¶ 14} Mr. Sarnescky's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to appellant. *Page 7 
MOORE, P. J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1