[Cite as *State v. Lanik*, 2013-Ohio-361.]

STATE OF OHIO        )              IN THE COURT OF APPEALS
                      )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                         C.A. No.      26192
                                                          26224
    Appellee

    v.

BUNNY L. LANIK                 APPEAL FROM JUDGMENT
DANNY A. HAMBY              ENTERED IN THE
                                   COURT OF COMMON PLEAS
                                   COUNTY OF SUMMIT, OHIO
    Appellants                     CASE No.     CR 11 02 0519 (B)
                                   CR 11 02 0519 (C)

DECISION AND JOURNAL ENTRY

Dated: February 6, 2013

MOORE, Judge.

{¶1}    Appellants, Danny Hamby and Bunny Lynn Lanik, appeal from their convictions in the Summit County Court of Common Pleas. We affirm.

I.

{¶2}    In February of 2011, police officers were observing Ms. Lanik's home due to complaints that the police department had received regarding possible drug manufacturing at the residence. While watching the home, the officers observed Ms. Lanik's brother, Mr. Hamby, exit the home with a white plastic bag in his hand. Mr. Hamby then left the home in a car driven by John Tiffany. Officers followed the car, and, after determining that it had a broken driver's side view mirror, the officers initiated a traffic stop. The traffic stop led to the discovery of materials associated with the manufacture of methamphetamine in the white plastic bag.

Officers arrested Mr. Hamby and returned to Ms. Lanik's home. After obtaining her consent to search the home, they discovered a methamphetamine lab in the basement.

{¶3} The Summit County Grand Jury indicted Ms. Lanik and Mr. Hamby on charges of aggravated possession of drugs in violation of R.C. 2925.11, two counts of endangering children in violation of R.C. 2919.22, illegal manufacturing of methamphetamine in violation of R.C. 2925.04, and illegal possession of chemicals for the manufacture of methamphetamine in violation of R.C. 2925.041, based upon the discovery of the methamphetamine lab in the house. The indictment further charged Mr. Hamby with additional counts of illegal manufacturing of methamphetamine and illegal possession of chemicals for the manufacture of methamphetamine based upon the discovery of the items in the car. In addition, the indictment was later supplemented to charge Mr. Hamby with another two counts of endangering children in violation of R.C. 2919.22.

{¶4} Ms. Lanik and Mr. Hamby entered not guilty pleas to all of the charges against them. Mr. Hamby thereafter filed a motion to suppress, wherein he challenged the justification for the traffic stop. After a hearing, the trial court denied the motion.

{¶5} Prior to trial, the State agreed to dismiss the two counts of endangering children charged against Mr. Hamby in the original indictment. Also prior to trial, the State filed a motion requesting the trial court to instruct the jury on complicity. The case proceeded to a jury trial without the trial court ruling on the State's requested instruction. After the State rested, defense counsel moved to dismiss the charges pursuant to Crim.R. 29. The court granted the motion as to the aggravated possession of drugs count in regard to Mr. Hamby only. After closing arguments, the State reiterated its request for a complicity instruction. Counsel for Mr. Hamby objected to the giving of a complicity instruction on the basis that counsel had

strategized his examination of witnesses in such a way as to demonstrate that the State could not prove that Mr. Hamby was the principal offender. The trial court overruled the objection and provided the jury with a complicity instruction. After deliberations, the jury found Mr. Hamby guilty of the two counts of illegal manufacture of methamphetamine and the two counts of illegal assembly or possession of chemicals for the manufacture of methamphetamines. The jury found Mr. Hamby not guilty of the endangering children charges as contained in the supplemental indictment. The jury found Ms. Lanik guilty of one count of endangering children, aggravated possession of drugs, illegal manufacturing of drugs, and illegal assembly or possession of chemicals for the manufacture of drugs. The jury found Ms. Lanik not guilty of the remaining count of endangering children. In sentencing entries issued on November 14, 2011 respectively, the trial court sentenced Mr. Hamby to a total term of incarceration of five years and sentenced Ms. Lanik to a total term of incarceration of four years.

{¶6} Mr. Hamby and Ms. Lanik timely appealed from the sentencing entries, and Mr. Hamby has set forth five, and Ms. Lanik has set forth three, assignments of error for our review. We have re-ordered and consolidated certain assignments of error to facilitate our discussion.

II.

### MR. HAMBY'S ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING [MR. HAMBY]'S MOTION TO DI[S]MISS BASED UPON THE FAILURE TO PROVIDE THE REQUIRED PRELIMINARY HEARING AND THEREBY VIOLATING [MR. HAMBY]'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS AND ARTICLE I, SECTION 14.

{¶7} In his third assignment of error, Mr. Hamby argues that the trial court erred in denying his motion to dismiss for failing to provide him with a preliminary hearing. We disagree.

{¶8} "A charge of felony shall be dismissed if the accused is not accorded a preliminary hearing within the time required by Sections 2945.71 and 2945.72 of the Revised Code." R.C. 2945.73(A). Pursuant to R.C. 2945.71(C)(1), the State must provide a preliminary hearing to an individual who has been charged with a felony within fifteen days if the person is not being held in jail and within ten days if the person is being held in jail. *See also* Crim.R. 5(B)(1).

{¶9} Here, Mr. Hamby was arrested on February 22, 2011, and his initial appearance in the trial court was on February 23, 2011. It is undisputed that Mr. Hamby was held in jail after his arrest due to his inability to secure bond. On March 3, 2011, defense counsel filed a motion to dismiss based upon the failure of the trial court to provide a preliminary hearing pursuant to R.C. 2945.71(C). Meanwhile, the same charges on which Mr. Hamby was being held were presented to the grand jury, which returned an indictment on March 11, 2011.

{¶10} In *State v. Pugh*, ("*Pugh I*"), 9th Dist. No. 8029, 1976 WL 188767, *1 (May 19, 1976), this Court addressed a similar fact pattern. There, Mr. Pugh was arrested on a felony charge and was held in jail for nineteen days prior to his preliminary hearing, in violation of R.C. 2945.71(C)(1). Mr. Pugh moved to dismiss the charge, and the trial court overruled his motion. He was subsequently indicted by the grand jury on the same charge, and was then tried and convicted. On appeal, Mr. Pugh maintained that his charge should have been dismissed for failure to provide him a preliminary hearing within the time mandates of R.C. 2945.71(C)(1). This Court concluded that Mr. Pugh was "correct in asserting the charge should have been dismissed in the Akron Municipal Court." *Pugh I* at *1. However, this Court further noted that, even had the municipal court dismissed the charge, such a dismissal would have been in the nature of a nolle prosequi. *Id.*, citing R.C. 2945.73(D). Therefore, the dismissal was not "a bar

to any further criminal proceedings against him based on the same conduct." *Pugh I* at *1, quoting R.C. 2945.73(D). Accordingly, because Pugh had been "properly indicted and tried," we determined that "[t]he error below was not prejudicial," and we affirmed his conviction. *Pugh I* at *1. Mr. Pugh then appealed this Court's decision to the Ohio Supreme Court, which affirmed. *State v. Pugh*, 53 Ohio St.2d 153 (1978). *See also State v. Bonarrigo*, 62 Ohio St.2d 7, 12 (1980) (noting that "a valid indictment can be returned subsequent to either a nolle prosequi or a dismissal of prior felony charges for failure to provide a preliminary hearing within 15 days of the initial arrest").

{¶11} Here, just as in *Pugh I*, although Mr. Hamby was not provided a preliminary hearing within the time mandates of R.C. 2945.71(C)(1), the grand jury subsequently indicted him. Therefore, although his charges should have been dismissed in the Akron Municipal Court for its failure to hold a preliminary hearing, he does not challenge the validity of the subsequent indictment on which he was tried and convicted. Accordingly, the municipal court's error in failing to hold a preliminary hearing was not prejudicial. Therefore, Mr. Hamby's third assignment of error is overruled.

### MR. HAMBY'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING [MR. HAMBY]'S MOTION TO SUPPRESS BASED UPON INVALIDLY OBTAINED CONSENT AND THEREBY VIOLATING [MR. HAMBY]'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION AGAINST UNREASONABLE SEARCHES AND SEIZURES * * *.

{¶12} In his second assignment of error, Mr. Hamby argues that the trial court erred in denying his motion to suppress because "[c]onsent to search the car in the case at bar was not requested until after the purpose for the original stop had terminated." However, in his motion to suppress, Mr. Hamby argued that the evidence obtained from the search of the car should have

been suppressed because the officers lacked justification to stop the car. Although Mr. Hamby now argues that Mr. Tiffany's consent was "invalidly obtained" due to the length of the stop he did not raise this argument in his motion to suppress below. Therefore, we decline to review the arguments made in his third assignment of error, which he makes for first time on appeal. *See State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, ¶ 11 (explaining that this Court need not reach the merits of an issue when an appellant forfeits that issue at trial by failing to raise it and subsequently fails to argue plain error on appeal). Accordingly, Mr. Hamby's third assignment of error is overruled.

### MS. LANIK'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED [MS.] LANIK'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIM. R. 29 AS THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BY THE STATE[ ]TO ESTABLISH A PRIMA FACIE CASE OF ANY CHARGES BEING SUBMITTED TO THE JURY[.]

### MR. HAMBY'S ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN FAILING TO GRANT MR. HAMBY'S MOTION FOR JUDGMENT OF ACQUITTAL ON ALL CHARGES, AS THE EVIDENCE PRESENTED WAS NOT LEGALLY SUFFICIENT TO SUPPORT A CONVICTION IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶13} In their first and fourth assignments of error, Ms. Lanik and Mr. Hamby, respectively, argue that their convictions were not supported by sufficient evidence. We disagree.

{¶14} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring). In making this

determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Circumstantial and direct evidence "possess the same probative value[.]" *Id.* at paragraph one of the syllabus. "Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." (Internal quotations omitted.) *State v. Tran*, 9th Dist. No. 22911, 2006-Ohio-4349, ¶ 13.

{¶15} Here, Ms. Lanik was convicted of child endangering in violation of R.C. 2919.22(B)(6), which provides:

> No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
>
> * * *
>
> Allow the child to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.

{¶16} Ms. Lanik was also convicted of aggravated possession of drugs in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance[.]"

{¶17} As to the remaining convictions, Ms. Lanik was convicted of one count each, and Mr. Hamby was convicted of two counts each, of illegal manufacturing of methamphetamine in violation of R.C. 2925.04, and illegal possession of chemicals for the manufacture of methamphetamine in violation of R.C. 2925.041. R.C. 2925.04(A) in part provides that "[n]o person shall knowingly * * * engage in any part of the production of a controlled substance." R.C. 2925.041(A) provides, "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance * * * with the intent to manufacture a controlled substance * * * in violation of section 2925.04 of the Revised Code." R.C. 2925.041(B) provides, "In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance * * *. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance * * *, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section."

{¶18} Neither Ms. Lanik nor Mr. Hamby dispute that there was a methamphetamine lab in the house. However, they maintain that Ms. Lanik's boyfriend, Richard Costoff, ran this lab without their knowledge or assistance and that the evidence was insufficient to demonstrate that they engaged in, or were complicit in, these activities.

{¶19} Pursuant to R.C. 2923.03(F), "[a] charge of complicity may be stated in terms of this section, or in the terms of the principal offense." Ohio's complicity statute provides,

> No person acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> (1) Solicit or procure another to commit the offense;
>
> (2) Aid or abet another in committing the offense;
>
> (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

R.C. 2923.03(A).

{¶20} In order to support a conviction based upon a defendant's complicity through aiding and abetting:

> [T]he evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.

*State v. Johnson*, 93 Ohio St.3d 240, 245 (2001). Proof of a shared criminal intent may be inferred from the circumstances surrounding the offense including presence, companionship, and conduct before and after the offense is committed. *Id.* at 243.

{¶21} Here, in its case-in-chief, the State presented the testimony of Mr. Tiffany and of three police officers who were present at the scene. Mr. Tiffany testified that Mr. Hamby hired him as a driver approximately two weeks prior to February 22, 2011. On the date at issue, Mr. Tiffany drove Mr. Hamby to Ms. Lanik's house so that Mr. Hamby could change his clothes and get something to eat. Mr. Tiffany waited in a back room on the first floor of the home and used the computer while Mr. Hamby went upstairs. Mr. Tiffany could hear Mr. Hamby speaking with a woman upstairs, but he was not aware of anyone else being present in the home. After about one and one-half to two hours, Mr. Hamby advised Mr. Tiffany that he was ready to leave. A few minutes after departing the home, police officers stopped Mr. Tiffany's car. After they were stopped, Mr. Hamby instructed Mr. Tiffany to not say anything to the officers. When the officers asked Mr. Tiffany if they could look in the car, Mr. Tiffany agreed because he "wasn't aware of anything being in the car that was illegal and [he] was perfectly fine with it."

{¶22} Officers Steve Hankins and Adam Lemonier and Lieutenant Brian Simcox testified that they were involved in the search of the car and the search of Ms. Lanik's home.

Officer Hankins testified that, on the date at issue, he noticed that a car was unusually parked in Ms. Lanik's driveway "with the tail end basically on the street." Because of the unusually-parked car and because he had received complaints regarding the residence, Officer Hankins decided to observe the residence. However, during his surveillance, he had to respond to a call, and he contacted Officer Lemonier to replace him.

{¶23} Officer Lemonier testified that he set up surveillance on Ms. Lanik's home in order to follow up with complaints that the police department had received regarding the house. While he was watching the home, he saw Mr. Tiffany leave the house with Mr. Hamby, who was carrying a white bag. The two men departed in the unusually-parked car. Officer Lemonier advised Officer Hankins that the car was moving, and Officer Lemonier initiated a traffic stop. Officer Lemonier then obtained Mr. Tiffany's consent to search the vehicle.

{¶24} Lieutenant Simcox testified that he heard that the officers had stopped a car leaving Ms. Lanik's residence, which they had been observing, and he went to the scene to assist. He learned that the officers had been given consent to search the car, and the lieutenant took Mr. Hamby out of the passenger's side of the car to pat him down. When he removed Mr. Hamby from the car, the lieutenant "could smell a strong ammonia smell from the front passenger floor." The officers removed a white bag from the front passenger floor. Inside the bag, the officers found ammonia nitrate that had been soaked in a solvent, lithium batteries that had been cut in half, and empty boxes of Sudafed. The officers also found a bottle of a solvent, Heet, located between the driver's seat and door. Lieutenant Simcox testified that these materials are commonly used in the production of methamphetamine. The officers placed Mr. Tiffany and Mr. Hamby under arrest.

{¶25} Lieutenant Simcox further testified that, while Officer Lemonier was tagging evidence obtained from the search of the car, the lieutenant went to Ms. Lanik's home. Lieutenant Simcox authenticated a digital audio recording of part of his encounter with Ms. Lanik, which was admitted into evidence at trial. During their discussion, Lieutenant Simcox advised Ms. Lanik that Mr. Hamby and another individual were stopped by police shortly after leaving her home and that the officers had located materials consistent with the production of methamphetamine in the car. Ms. Lanik agreed to let the officers search the home. On the recording Ms. Lanik stated that there "is not supposed to be" a methamphetamine lab in the home. The lieutenant replied that there was an odor in the home which was consistent with methamphetamine production, and Ms. Lanik responded that she was unable to smell it. The lieutenant also asked Ms. Lanik if her boyfriend, Richard Costoff, was home, and she stated that she was unsure, and began calling his name. While Ms. Lanik was accompanying the lieutenant through the home, they encountered Mr. Costoff walking up the basement steps. From the basement steps, the lieutenant could see part of a methamphetamine lab in the basement. The officers then removed Ms. Lanik and Mr. Costoff from the house. While they were exiting the home, Mr. Costoff confirmed that there was a methamphetamine lab in the basement, and he warned the officers that there was lithium soaking in a solvent at that time, which could pose a danger to the officers. Mr. Costoff then volunteered to walk through the basement with the officers in order to point out where the dangerous materials were located.

{¶26} In the basement, officers located a glass jar containing liquid methamphetamine. In another basement room, officers located trash bags containing a substantial amount of "meth trash," including Sudafed wrappers, cold packs, and lithium strips. Lieutenant Simcox explained that cold packs contain the ammonia nitrate that is used in methamphetamine production. Based

12

upon the lieutenant's observations of the used materials found in the basement, he opined that the drugs had been manufactured in the house "for an extensive period of time." In addition, the lieutenant testified that Mr. Costoff had informed him that he had been producing methamphetamine in the basement for about one month.

{¶27} In the first floor kitchen, officers found propane, alcohol, and funnels that could be used in the manufacturing of methamphetamine. In the first floor bedroom, officers found two receipts for Sudafed and cold packs which were purchased on February 22, 2011. In the dresser of the upstairs southwest bedroom, which Officer Lemonier testified that Ms. Lanik had indicated was her bedroom, officers found structured tin foil, which Lieutenant Simcox testified appeared to be a "smoking device." Also in Ms. Lanik's bedroom, the officers located a white powder on top of glass, a century safe containing a "meth pipe" and plastic bags, plates which appeared to have a "residue" on them, an additional "meth pipe" in a dresser drawer, and a digital scale. Also on the second floor, officers discovered a children's bedroom, although no children were then located in the home at the time of the arrest. Photographs taken during the search of the car and the house were admitted into evidence. The photo of the children's bedroom displays bunk beds with bedding, and there appears to be assorted girl's clothing and accessories on the top bunk bed and on the floor. The photo also shows what appears to be small Valentine's Day cards and candy lying on the middle of the bed, next to an overturned bag.

{¶28} Ms. Lanik and Mr. Hamby argue that the above evidence was insufficient to support their convictions. We will consider separately the sufficiency of this evidence as it relates to Ms. Lanik and as it relates to Mr. Hamby.

Bunny Lynn Lanik

{¶29} In regard to Ms. Lanik, she does not dispute that she has two children who at times stay in the bedroom located on the second floor of her home. From the photograph displaying the condition of, and items located within, the children's bedroom, the jury could reasonably infer that a child was actively or recently residing in this room. Although Lieutenant Simcox testified that no children were home at the time of Ms. Lanik's arrest, he further testified that the amount of methamphetamine "trash" located in the basement indicated that methamphetamine had been manufactured for an "extensive period" of time. Additionally, the lieutenant testified that Mr. Costoff had advised him that he had been making methamphetamine in the home for about one month.

{¶30} Further, as set forth above, the officers' testimony indicated that: there was an odor in the house consistent with a "meth lab;" Mr. Costoff was actively manufacturing methamphetamine on the date at issue while Ms. Lanik was present in the home; materials used in the production and use of methamphetamine were located throughout the house; drug paraphernalia, "white powder," and "residue" were found in Ms. Lanik's bedroom; and, the methamphetamine lab was apparent from the basement steps. Based upon this, there was sufficient evidence from which the jury could reasonably infer that Ms. Lanik allowed a child to be present in the home when she had knowledge that methamphetamine was being manufactured in the home. Further, based upon this testimony, a jury could reasonably infer that Ms. Lanik was engaged in, or at minimum complicit in, possessing methamphetamine, manufacturing methamphetamine, and possessing items used in the assembly of methamphetamine.

{¶31} Accordingly, Ms. Lanik's convictions for endangering children, aggravated possession of drugs, illegal manufacturing of drugs, and illegal assembly or possession of

chemicals for the manufacture of drugs were supported by sufficient evidence. Therefore, Ms. Lanik's first assignment of error is overruled.

Danny Hamby

{¶32} Mr. Hamby was convicted of two counts of illegal manufacture of methamphetamine and two counts of illegal assembly or possession of chemicals for the manufacture of methamphetamine. One count of illegal manufacture of methamphetamine and one count of illegal assembly or possession of chemicals for the manufacture of methamphetamine were based upon the discovery of materials associated with methamphetamine production in the house. The remaining counts were based upon the discovery of materials associated with methamphetamine production in the car.

{¶33} In regard to the house-based charges, Mr. Tiffany testified that, on that date at issue, he waited for between one and one-half to two hours for Mr. Tiffany at the house. During that time, he could hear Mr. Tiffany speaking with a woman upstairs, but Mr. Tiffany did not see or hear Mr. Costoff. Lieutenant Simcox testified that Mr. Costoff was actively "cooking" methamphetamine in the basement at that time, and that he acknowledged that he gave Mr. Hamby the bag containing the methamphetamine materials. The odor of the bag was consistent with the odor the officers testified they smelled at the house during the manufacture of methamphetamine. Given this testimony, and when combined with the officers' testimony regarding the noticeable nature of the lab from the basement steps and the odor which was present in the house, the jury could reasonably conclude that Mr. Hamby was involved, or at minimum, was complicit in, the manufacturing of methamphetamine and the possession of items utilized to make methamphetamine in the house.

**{¶34}** In addition, in regard to the car-based charges, the jury could reasonably infer from the above testimony that Mr. Hamby was aware that methamphetamine-making materials were located in the white bag, which Lieutenant Simcox testified Mr. Costoff had asked Mr. Hamby to dispose of at the gas station. The disposal of the remnants of the manufacturing of methamphetamine is an activity "incident to production" so as to be included in the definition of "manufacture." *See State v. Myers*, 9th Dist. No. 23435, 2007-Ohio-2737, ¶ 17; (*see also* R.C. 2925.01(J) (defining "manufacture" to include "activities incident to production"). Based upon the above evidence, the jury could reasonably conclude that Mr. Hamby knowingly engaged in the production of methamphetamine by disposing of the remnants of the manufacturing process. Further, when this evidence is considered with the evidence of the officers' discovery of materials in that bag and the discovery of the Heet in the car, the evidence is sufficient to conclude that Mr. Hamby illegally possessed materials in the car which were intended to be used in the production of methamphetamine.

**{¶35}** Accordingly, Mr. Hamby's convictions for two counts of manufacturing methamphetamine in violation of R.C. 2925.04 and for two counts of possessing materials used in the assembly of methamphetamine in violation of R.C. 2925.041, were supported by sufficient evidence. Therefore, Mr. Hamby's fourth assignment of error is overruled.

**MS. LANIK'S ASSIGNMENT OF ERROR II**

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE INDICTED OFFENSES BEYOND A REASONABLE DOUBT.

**MR. HAMBY'S ASSIGNMENT OF ERROR V**

MR. HAMBY'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[ ]IN VIOLATION OF THE DUE PROCESS CLAUSE OF

THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶36} In their second and fifth assignments of error, Ms. Lanik and Mr. Hamby, respectively, argue that their convictions were against the manifest weight of the evidence. When a defendant asserts that his or her conviction is against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating the evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶37} In their arguments that their convictions were against the manifest weight of the evidence, Ms. Lanik and Mr. Hamby maintain that the weight of the evidence supports their contention that they had no knowledge of, and were not complicit in, Mr. Costoff's drug-related activities. In support, they cite to the testimony of Mr. Costoff and of Ms. Lanik.

{¶38} Mr. Costoff testified for the defense at trial. He averred that he, Ms. Lanik, Mr. Hamby, Ms. Lanik's children, and another adult couple, Ronnie and Petra, lived at the house. Mr. Costoff explained that he had been addicted to methamphetamine for about seven years, and he decided to create a methamphetamine lab in the basement of the home because "nobody comes in the basement." Mr. Costoff concealed the smells perpetuated by chemicals by installing a makeshift ventilation system in the chimney. He testified that Ms. Lanik suffered

from emotional difficulties, was often heavily medicated, and slept most of the day. Neither she nor Mr. Hamby had knowledge of his activities in the basement. Further, although Mr. Costoff admitted that, on the date at issue, he gave the white bag to Mr. Hamby, and he asked him to dispose of it at the gas station because it was going to smell, Mr. Costoff did not tell Mr. Hamby what was in the bag.

{¶39} Further, Mr. Costoff testified that Ronnie and Petra resided in the first floor bedroom of the home, and Ronnie had taught Mr. Costoff how to produce methamphetamine. In exchange, Mr. Costoff agreed to dispose of several bags of methamphetamine "trash" for Ronnie. Mr. Costoff testified that these were the same bags of trash that the officers located in the basement, and he stated that he never cooked methamphetamine when the children were home. Mr. Costoff further maintained that some of the drug-related items that the officers had testified were found in his and Ms. Lanik's bedroom belonged to him, and the remaining drug-related items that the officers had testified were found in his and Ms. Lanik's bedroom were actually located in the bedroom that Ronnie and Petra shared on the first floor.

{¶40} Ms. Lanik testified on her own behalf at trial. Ms. Lanik confirmed that she suffers from depression, and she rarely left the second floor of her home during the time that Mr. Costoff was residing with her. Ms. Lanik acknowledged that she has two children and that, although her son primarily resides with his aunt, her daughter resided with her during the weekdays and with her aunt on the weekends. Due to Ms. Lanik's depression, Mr. Costoff usually took care of her daughter. Ms. Lanik further maintained that Mr. Costoff took care of the household chores, and she never went into the basement, as Mr. Costoff did the family's laundry.

{¶41} Ms. Lanik further testified that Mr. Hamby was residing at her house on February 22, 2011, but that he had "been gone." On that day, Mr. Hamby had come upstairs, and Ms.

Lanik asked him if Mr. Costoff was home because her daughter needed to be picked up. Mr. Hamby told her that he did not think Mr. Costoff was there, and Ms. Lanik got out of bed to prepare to pick up her daughter. When she was ready to leave the house, she noticed officers outside. After speaking with them, she agreed to let them search the house. Ms. Lanik maintained that at no time prior to the officer's discovery of the methamphetamine lab was she aware of Mr. Costoff's activities in the basement.

{¶42} Ms. Lanik and Mr. Hamby maintain that the testimony of Ms. Lanik and Mr. Costoff demonstrates that Mr. Costoff successfully concealed his production of methamphetamine, and neither Ms. Lanik nor Mr. Hamby were engaged in, or knowingly assisted in, the manufacturing of methamphetamine, the possession of items to produce methamphetamine, or the possession of methamphetamine.

{¶43} However, as set forth in our discussion of the sufficiency of the evidence, circumstantial evidence existed from which a jury could reasonably infer that Ms. Lanik and Mr. Hamby were, at minimum, complicit in Mr. Costoff's activities. Although Mr. Costoff maintained that his makeshift exhaust system "sucked * * * the smells right out" of the basement, Lieutenant Simcox testified that he could smell an odor associated with methamphetamine production when he was on the first floor of the house speaking to Ms. Lanik. Further, methamphetamine paraphernalia, "white powder," and "residue" were found in Ms. Lanik's bedroom. Materials associated with the production of methamphetamine were located throughout the home, and the basement lab was apparent from the basement steps. The witnesses' testimony further indicated that Mr. Hamby had contact with Mr. Costoff in the home during the time that Mr. Costoff testified that he was actively manufacturing methamphetamine in the basement. Mr. Costoff testified that Mr. Hamby agreed to dispose of the bag, the smell of

which was consistent with methamphetamine production, and the officers located materials used in the production of methamphetamine in the bag and in the car.

**{¶44}** Although Ms. Lanik's and Mr. Costoff's testimony may contradict the inferences drawn from the above testimony, in that both individuals maintained that Mr. Costoff produced methamphetamine without Mr. Hamby's or Ms. Lanik's knowledge or assistance, "[t]he jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). This is because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). Although it is possible that Ms. Lanik and Mr. Hamby were neither aware of, nor complicit in, Mr. Costoff's production of methamphetamine, based upon our review of the record we cannot say that the jury lost its way in determining otherwise. *See State v. Kirk*, 9th Dist. No. 26358, 2012-Ohio-5655, ¶ 10; *see also State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, ¶ 18 ("A conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events.").

**{¶45}** Based upon the foregoing, we conclude that this is not the exceptional case where the jury created a manifest miscarriage of justice in finding Ms. Lanik guilty of endangering children, aggravated possession of drugs, illegal manufacturing of drugs, and illegal assembly or possession of chemicals for the manufacture of drugs or in finding Mr. Hamby guilty of two counts of illegal manufacturing of drugs and two counts of illegal assembly or possession of chemicals for the manufacture of drugs. Accordingly, Ms. Lanik's second assignment of error and Mr. Hamby's fifth assignment of error are overruled.

**MS. LANIK'S ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY ON COMPLICI[T]Y WHEN NO EVIDENCE WAS EVER OFFERED THAT [MS.] LANIK AIDED OR ABETTED[.]

**MR. HAMBY'S ASSIGNMENT OF ERROR I**

THE TRIAL COURT VIOLATED MR. HAMBY'S RIGHT TO FAIR AND IMPARTIAL TRIAL BY ALLOWING THE JURY TO BE CHARGED ON COMPLICITY AFTER THE DEFENSE HAD RESTED AND[ ]MR. HAMBY PRESENTED A DEFENSE THAT HAMPERED HIS[ ]ABILITY TO ADEQUATELY PREPARE A DEFENSE IN VIOLATION [OF] HIS RIGHTS UNDER THE SIXTH AND FOURTE[E]NTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶46} In their third and first assignments of error, Ms. Lanik and Mr. Hamby, respectively, argue that the trial court erred by instructing the jury on complicity. We disagree.

{¶47} "We review the trial court's decision to instruct the jury on complicity for an abuse of discretion." *State v. Wilson*, 9th Dist. No. 25100, 2011-Ohio-4072, ¶ 24, citing *State v. Horne*, 9th Dist. No. 24672, 2010-Ohio-350, ¶ 19. An "abuse of discretion" connotes that the trial court was arbitrary, unreasonable, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A complicity instruction is proper if 'the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor[.]'" *Kirk* at ¶ 4, quoting *State v. Perryman*, 49 Ohio St.2d 14 (1976), paragraph five of the syllabus, overruled on other grounds by *Perryman v. Ohio*, 438 U.S. 911 (1978).

{¶48} Here, as set forth in our discussions relative to the sufficiency of the evidence and the manifest weight of the evidence, the testimony adduced at trial indicated that the house in which Ms. Lanik and Mr. Hamby resided contained a methamphetamine lab in the basement. The officers testified that this lab was apparent from the basement steps and that methamphetamine-making materials were located throughout the home and within the white bag

that Mr. Costoff provided to Mr. Hamby. The officers further testified that the house, the white bag, and the car in which Mr. Hamby was a passenger, emanated an odor consistent with the production of methamphetamine. The testimony also indicated that both Ms. Lanik and Mr. Hamby were present in the home when Mr. Costoff was actively manufacturing methamphetamine on February 22, 2011. Police officers discovered "white powder," "residue," and "meth pipes," in the bedroom that Ms. Lanik shared with Mr. Costoff.

{¶49} Based upon the foregoing, the trial court did not abuse its discretion in determining that the evidence adduced at trial could reasonably support Mr. Hamby's and Ms. Lanik's convictions as aiders and abettors. *See Perryman* at paragraph five of the syllabus. Accordingly, Ms. Lanik's third assignment of error is overruled.

{¶50} Furthermore, the Ohio Supreme Court has reasoned that R.C. 2923.03(F), which provides that "[a] charge of complicity may be stated in terms of this section, or in the terms of the principal offense," puts a defendant on notice that the trial court could instruct the jury on complicity, even where the indictment charged the defendant as though he were the principal. *State v. Herring*, 94 Ohio St.3d 246, 251 (2002), and *State v. Keenan*, 81 Ohio St.3d 133, 151 (1998).

{¶51} Here, the State moved to include the complicity instruction prior to trial. Defense counsel did not respond to this motion, and the trial court did not rule on this motion prior to trial. However, after closing arguments, the State asked the trial court to rule on the instruction. Mr. Hamby's counsel objected to the instruction, stating that, had he known the court would give the instruction, he would have followed a different strategy in defending Mr. Hamby. Based upon defense counsel's remarks, Mr. Hamby argues that his defense was prejudiced due to his lack of notice that the trial court would give the complicity instruction.

**{¶52}** However, as set forth above, R.C. 2923.03(F) provides notice that a complicity instruction may be given. *Herring* at 251. Further, here, the State made a pretrial motion requesting a complicity instruction. Therefore, we find Mr. Hamby's argument that his counsel had no notice that such an instruction may be given to lack merit.

**{¶53}** Accordingly, Mr. Hamby's first assignment of error is overruled.

III.

**{¶54}** Ms. Lanik's and Mr. Hamby's assignments of error are overruled. The judgments of the Summit County Court of Common Pleas are affirmed.

Judgments affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.


APPEARANCES:

RHONDA L. KOTNIK, Attorney at Law, for Appellant.

DAWN M. KING, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.