[Cite as *State v. Kuscsik*, 2014-Ohio-2697.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0058** |
| TOD KUSCSIK, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 488.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Rebecca Hall,* P.O. Box 242, 34 South Chestnut Street, Suite 300, Jefferson, OH 44047 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Tod Kuscsik, Jr., appeals his conviction following a jury trial in the Ashtabula County Court of Common Pleas of illegal manufacture of methamphetamine and illegal assembly or possession of chemicals for the manufacture of methamphetamine. At issue is whether appellant's conviction was supported by sufficient credible evidence. For the reasons that follow, we affirm.

{¶2} Appellant was indicted for illegal manufacture of methamphetamine ("meth"), a felony of the second degree, in violation of R.C. 2925.04, and illegal assembly or possession of chemicals for the manufacture of meth, a felony of the third degree, in violation of R.C. 2925.041. Appellant pled not guilty and the case was tried to a jury.

{¶3} Deputy Steven Murphy of the Ashtabula County Sheriff's Department testified that on July 24, 2012, at about 3:00 a.m., he was on patrol in his cruiser on Eureka Road in Ashtabula Township assisting Ashtabula County Sheriff's Deputy Scott Davis on an unrelated call.

{¶4} Deputy Murphy testified that while in the area he saw a vehicle pulling into the driveway of appellant's residence on Eureka Road. The driver, later identified as Dustin Mascik, failed to use his turn signal, and Deputy Murphy stopped him for this traffic violation. Deputy Murphy learned from L.E.A.D.S. that Mascik's driver's license had been revoked. When the deputy told Mascik that his car would have to be towed, Mascik said he knew appellant and had made arrangements with him to leave his car in his driveway.

{¶5} Deputy Murphy testified that he and Deputy Davis went to appellant's front door to confirm that Mascik had permission to leave his car in his driveway. Appellant's home is a small, one-story, ranch-style home. Deputy Davis knocked and in about one and one-half minute, appellant came to the door and opened it. Appellant came outside. He appeared to be wide awake.

{¶6} Deputy Murphy explained why they were there, and appellant gave them permission to leave Mascik's car in his driveway. Deputy Murphy said that while talking

2

to appellant outside, he detected an odor consistent with that of a meth lab coming from inside appellant's residence and he mentioned this to appellant.

{¶7} Deputy Murphy testified he has experience and training in meth and meth labs and has investigated about 70 meth labs. He is familiar with the distinctive odor produced by the manufacture of meth. The chemicals used in the manufacturing process create a smell that is similar to, but much stronger than, the smell of ammonia.

{¶8} After advising appellant of his Miranda rights, Deputy Murphy asked him if there was a meth lab in his house. At first appellant said "no." Deputy Murphy then asked him if anyone else was in the house. Appellant said that a James Coffman was inside. Deputy Murphy then asked appellant again if there was a meth lab in the house. This time appellant said Coffman brought a meth lab with him in the saddlebag on the motorcycle he had driven there. Deputy Murphy checked the motorcycle, which was in appellant's garage, but found nothing connecting it with a meth lab.

{¶9} Deputy Murphy testified that appellant said Coffman was in the back bedroom, which appellant said was his own bedroom, and gave the deputy permission to enter the house. The front door opens into the living room and a small hallway off the living room leads to appellant's bedroom. Deputy Davis stayed with appellant in the living room while Deputy Murphy went to appellant's bedroom. Deputy Murphy said that as he walked through the house, the entire house smelled of meth. He said that as he approached appellant's bedroom, the odor of a meth lab was overwhelming.

{¶10} Deputy Murphy said that when he opened the bedroom door, he saw Coffman lying on the floor on his stomach in front of the bed. The bed was neat and looked like it had not been slept in. Deputy Murphy said it did not appear that Coffman

3

was living at that house or staying the night in that bedroom. The deputy said that Coffman appeared to be under the influence of narcotics. Deputy Murphy asked Coffman why he was there, and Coffman said he came there to buy drugs. Deputy Murphy instructed him to show him his hands. Coffman became belligerent and, as a result, Deputy Davis came in the bedroom to assist Deputy Murphy. As Deputy Murphy tried to control Coffman, the deputy saw the closet door in appellant's bedroom was open and he noticed a one-pot meth lab, i.e., a plastic pop bottle, inside the closet. The meth lab was active in that its contents were bubbling and rolling. Next to the bottle was a grinder, which is used in the manufacture of meth to grind pseudoephedrine pills into a powder.

{¶11} Deputy Murphy said he also found in the closet a mason jar containing a liquid with a funnel and coffee filters going into the jar. These items are also used in the manufacture of meth. Once the various chemicals are cooked, the finished product is poured into a jar through a funnel and coffee filters. The liquid chemicals go into the jar, while the wet meth is collected in the filters. Once the meth dries, it takes the form of a white powdery substance, which can be snorted, injected, swallowed, or smoked.

{¶12} After Deputy Murphy located the foregoing items in the closet, appellant pointed out to the deputies a white plastic trash bag in the back enclosed porch, and said that Coffman had brought in another meth lab in that bag.

{¶13} Returning to appellant's bedroom, Deputy Murphy found a large portable toolbox in front of a dresser. Inside the toolbox were several items that are used in the production of meth, including HEET, a solvent used to break down pseudoephedrine into a liquid; plastic tubing; and two bowls with a white powdery substance in them.

4

{¶14} Deputy Murphy said he found meth paraphernalia on the top of the dresser in appellant's bedroom. These items included a spoon; a mirror; two snorting straws; a pipe; a large glass bowl containing a white residue; and a plate with a white residue, which was later determined to be meth.

{¶15} Deputy Murphy also found a black vinyl zipper pouch with the name "Tod" (for appellant, Tod Kuscsik, Jr.) on it in the top drawer of the dresser in appellant's bedroom. The pouch contained a digital scale, which is used to weigh the finished meth for distribution, and several small (two inch by one inch) baggies, which are used to package and sell the meth.

{¶16} Deputy Murphy also found a large digital scale on a container in appellant's bedroom.

{¶17} In addition, Deputy Murphy found a package of lithium batteries still containing some of the batteries in appellant's bedroom. Lithium is an essential ingredient in the manufacturing of meth. The batteries are pulled apart and the lithium strips inside are removed and mixed with water and other chemicals in the one-pot lab, which causes a violent reaction in the bottle.

{¶18} Deputy Murphy also found a clear tube and a green tube with a white residue on both, which was later determined to be meth, in appellant's bedroom. Such tubes are used to siphon off gasses produced in the manufacturing process.

{¶19} Deputy Murphy testified that he and Deputy Davis then turned their attention to the white plastic trash bag in the back enclosed porch that appellant had pointed out to them as having been brought into the house by Coffman and containing a second one-pot meth lab. Deputy Murphy tore the bag open. Inside the deputies found

several items used to manufacture meth. These items included a one-pot meth lab; a drain opener, i.e., sulphuric acid or lye, which is mixed with the pseudoephedrine pills; and a box containing empty blister packets for the pills.

**{¶20}** Deputy Murphy said he also located a one-gallon canister of Coleman lighter fuel in the breezeway between the house and the garage. Coleman fuel is another solvent used in the manufacture of meth, as an alternative to HEET, to break down the pseudoephedrine pills into a liquid.

**{¶21}** Photographs taken of appellant's house, bedroom, closet, dresser, and breezeway showing all these items were admitted into evidence.

**{¶22}** Deputy Murphy testified that after he and Deputy Davis located the active meth lab in the closet, he requested a remediation specialist be sent to the scene. Ashtabula County Sheriff's Deputy Scott Daniels responded. He took the hazardous manufacturing materials found in the house outside and neutralized them.

**{¶23}** Deputy Murphy arrested appellant and transported him to jail.

**{¶24}** The parties stipulated to a lab report prepared by the Ohio Bureau of Criminal Identification and Investigation, which concluded that: (1) the clear tube and the green tube found in appellant's bedroom contained meth and (2) a plate with residue found on top of the dresser in appellant's bedroom also contained meth.

**{¶25}** Appellant testified on his own behalf. He was convicted in 2006 for possession of drugs and trafficking in drugs, for which he was sentenced to six years in prison. He was released in January 2012, six months before the instant crimes. Appellant was also previously convicted in separate cases of burglary, breaking and entering, felony theft, receiving stolen property, attempted forgery, and misuse of credit

6

cards. He also has multiple prior misdemeanor theft convictions. He was also convicted of failure to appear during the proceedings in the instant case.

{¶26} Appellant testified that during the evening of the instant offenses, on July 23, 2012, at about 6:00 p.m., his friend James Coffman came to his house. Coffman is married and wanted to use appellant's bedroom to be with a female named Rachel. Coffman parked his motorcycle in appellant's garage because he did not want his wife to see he was at appellant's house. Appellant smoked marijuana and had several drinks with Coffman and Rachel that evening in the living room. Appellant said that at midnight, Coffman and Rachel went into his bedroom, and he fell asleep on the couch in the living room. Appellant said that sometime between midnight and 3:00 a.m., Rachel left his house.

{¶27} Appellant admitted he uses marijuana and meth, but that he had no idea there was a meth lab in his bedroom. He said he and Coffman have been friends for 16 years and they do drugs together.

{¶28} In contrast to Deputy Murphy's testimony, appellant said that only Deputy Davis, not Deputy Murphy, came to the door asking if Mascik could leave his car in his driveway. Appellant said that Deputy Murphy was standing in his driveway with Mascik. Appellant said that Deputy Davis never said he smelled meth. Appellant said that sometime later, Deputy Murphy came to the front door and asked him what was the chemical odor he smelled. Appellant said there was no chemical odor. Appellant said that Deputy Murphy then asked him whose motorcycle was in the garage and appellant said it belonged to Coffman. Appellant said he told Deputy Murphy that Coffman was in his bedroom. Deputy Murphy asked to talk to Coffman and appellant allowed the

7

deputy to enter his house. Appellant said that Deputy Murphy never asked him if there was a meth lab in his house and that he, appellant, never said that Coffman brought a meth lab into the house. Instead, appellant said that Deputy Murphy said he *smelled* a meth lab and that he, appellant, said the only way there could be a meth lab in his house would be if Coffman brought one with him.

{¶29} Appellant said he directed the deputies to the white trash bag in the rear of the house, but he said he never told Deputy Murphy that there was a meth lab in the bag. He said he only mentioned the bag to the deputies because he saw Coffman throw it in the back porch.

{¶30} Appellant said that the black pouch with a zipper containing a scale and baggies with his name on it and the plate with meth found on top of his dresser belonged to him, but said that none of the components of a meth lab located by the deputies in his house was his.

{¶31} Appellant said he had no idea what Coffman meant when he said he came to appellant's house to buy drugs.

{¶32} On cross-examination, appellant could not explain how Coffman could have brought all the manufacturing components located by the deputies into his house, let alone his bedroom, without him knowing about it. Appellant admitted he knows Mascik, the male Deputy Murphy stopped in his driveway at 3:00 a.m. that night, and said that Mascik just happened to be "dropping by."

{¶33} Appellant did not call as witnesses Coffman, Rachel, or Mascik to corroborate any aspect of his testimony.

8

**{¶34}** The jury found appellant guilty of both illegal manufacture of meth and illegal assembly or possession of chemicals for the manufacture of meth as charged in the indictment. The court referred the matter for a presentence report. At the sentencing, the court merged the illegal assembly charge into the illegal manufacture charge. The court found that appellant has seven prior felony convictions. The court sentenced appellant for the illegal manufacture offense to five years in prison, to be served concurrently with his 18-month sentence for his failure to appear conviction.

**{¶35}** Appellant appeals his conviction, asserting three assignments of error. Because they are interrelated, they shall be considered together. They allege:

**{¶36}** "[1.] There was insufficient evidence presented to sustain a conviction for the charges of illegal manufacturing of drugs, illegal assembly or possession of chemicals for the manufacture of drugs in violation of defendant-appellant's Fifth, Sixth and Fourteenth Amendment rights.

**{¶37}** "[2.] The trial court erred to the prejudice of Mr. Kuscsik when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

**{¶38}** "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶39}** An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant

9

would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). Whether the evidence is legally sufficient to sustain a verdict is a question of law which we review de novo. *Id.* at 386.

{¶40} An appellate court also applies the foregoing test in reviewing the trial court's ruling on a motion for directed verdict under Crim.R. 29 as such motion also tests the sufficiency of the evidence. *State v. Hall*, 11th Dist. Trumbull No. 2011-T-0115, 2012-Ohio-4336, ¶7; *State v. Czajka*, 101 Ohio App.3d 564, 573 (8th Dist.1995).

{¶41} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses. *Thompkins*, *supra*, at 387. The court determines whether, in resolving conflicts in the evidence and deciding witness credibility, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* The discretionary power to grant a new trial should only be exercised in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* Witness credibility rests solely with the finder of fact, and an appellate court is not permitted to substitute its judgment for that of the jury. *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "The jury is entitled to believe all, part, or none of the testimony of any witness." *State v. Archibald*, 11th Dist. Lake Nos. 2006-L-047 and 2006-L-207, 2007-Ohio-4966, ¶61. The role of the reviewing court is to engage in a limited weighing of the evidence in determining whether the state properly carried its burden of persuasion. *Thompkins*, *supra*, at 390. If the evidence is susceptible to more than one interpretation, an appellate court must interpret it in a manner consistent with

the verdict. *State v. Banks*, 11th Dist. Ashtabula No. 2003-A-0118, 2005-Ohio-5286, ¶33.

**{¶42}** The evidence presented by the state against appellant was circumstantial in nature. Circumstantial evidence is the proof of facts by direct evidence from which a factfinder may reasonably infer the existence of other facts. *State v. Pistillo*, 11th Dist. Lake No. 2003-L-183, 2004-Ohio-6333, ¶20. Circumstantial evidence and direct evidence inherently possess the same probative value. *Jenks*, *supra*, at 272. As circumstantial evidence and direct evidence are indistinguishable in this respect, "all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Id.*

**{¶43}** Appellant was convicted of illegal manufacture of meth in violation of R.C. 2925.04, and illegal assembly or possession of chemicals for the manufacture of meth in violation of R.C. 2925.041. R.C. 2925.04(A) provides, "[n]o person shall knowingly * * * manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.041(A) provides, "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance * * * with the intent to manufacture a controlled substance * * * in violation of section 2925.04 of the Revised Code." R.C. 2925.041(B) provides, "[i]n a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance * * *. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance * * *, with the intent to manufacture a controlled substance * * *, is sufficient to violate this section."

11

**{¶44}** Appellant does not dispute that there was a meth lab in his house. However, he maintains that Coffman, his close friend for 16 years, ran this lab without his knowledge or assistance and that the evidence was insufficient to demonstrate that he engaged in, or was complicit in, these activities.

**{¶45}** Ohio's complicity statute provides, "[a] charge of complicity may be stated in terms of this section [i.e., Ohio's complicity statute], or in terms of the principal offense." R.C. 2923.03(F). Further, "[n]o person acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * [a]id or abet another in committing the offense * * *." R.C. 2923.03(A)(2).

**{¶46}** In order to support a conviction based on a defendant's complicity by aiding and abetting, "the evidence must show that the defendant *supported*, *assisted*, encouraged, *cooperated with*, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." (Emphasis added.) *State v. Johnson*, 93 Ohio St.3d 240, 245 (2001). Mere presence of an individual at the scene of the crime is not sufficient to prove that he or she was an accomplice. *Id.* at 243-245. However, aiding and abetting can be demonstrated by direct or circumstantial evidence, and it can be inferred from "presence, companionship and conduct before and after the offense is committed." *Id.* A complicity instruction is proper if "the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor[.]" *State v. Perryman*, 49 Ohio St.2d 14 (1976), paragraph five of the syllabus. Here, the trial court instructed the jury regarding the law of complicity with respect to both of the charged offenses. Moreover, appellant did not object to this instruction below and does not challenge it on appeal.

**{¶47}** Turning to the instant case, Deputy Murphy testified there was a strong odor in the house consistent with a meth lab and this odor was overwhelming as the deputy approached appellant's bedroom. Despite the late hour, Deputy Murphy said that when they came to the door, appellant appeared to be wide awake. In addition, appellant told the deputies that Coffman had brought two meth labs in the house. Further, appellant was present in the house while Coffman was manufacturing meth in appellant's bedroom. Appellant admitted he and Coffman have been friends for many years, and Coffman told Deputy Murphy he came to appellant's house that night to buy drugs. Further, materials used in the production and use of meth were located in appellant's bedroom, and a white residue, which was later determined to be meth, was found on several of these items. Also, chemicals used to manufacture meth were found elsewhere in the house. In addition, by allowing Coffman to use his bedroom, appellant provided him with a safe, hidden location to manufacture meth. Thus, appellant supported, assisted, and cooperated with Coffman in manufacturing meth and assembling or possessing chemicals used in manufacturing meth. Based on this, the state presented sufficient evidence from which the jury could reasonably infer that appellant had knowledge that meth was being manufactured in his home and that he was engaged in, or at least complicit in, manufacturing meth and assembling or possessing chemicals used to manufacture meth.

**{¶48}** The facts of the instant case are substantially the same as those presented in *State v. Lanik*, 9th Dist. Summit Nos. 26192 and 26224, 2013-Ohio-361, *motion for appeal denied by the Ohio Supreme Court at* 136 Ohio St.3d 1472, 2013-Ohio-3790. There, upon arrival at the defendant's home, the officer told the defendant

13

that he detected an odor of meth in her home, but she said she could not smell it. At that time the officer found the defendant's boyfriend in her basement actively manufacturing meth. Further, the meth lab was apparent from the basement steps. Materials used in the production and use of meth were located throughout the basement. Drug paraphernalia and a white residue were found in the defendant's bedroom. Fuel was found in the kitchen. In the defendant's bedroom, officers found a smoking device, white powder on top of glass, a meth pipe and plastic bags, plates with a residue on them, and a digital scale. The defendant did not dispute that there was a meth lab in her house, but she argued her boyfriend ran this lab in her basement without her knowledge or assistance and that the evidence was insufficient to demonstrate she engaged in, or was complicit in, these activities. However, on these facts, the Ninth District held there was sufficient evidence from which the jury could reasonably infer that the defendant had knowledge meth was being manufactured in her home and that the defendant was engaged in or, at a minimum, was complicit in manufacturing meth and assembling or possessing chemicals for the manufacture of meth. *Id.* at ¶30.

{¶49} In support of appellant's manifest weight challenge, he does not point to any conflicts in the evidence, which is the usual basis for such challenge. *State v. Triplett*, 11th Dist. Ashtabula No. 2013-A-1018, 2013-Ohio-5190, ¶48. Instead, he argues the state presented no evidence of appellant's complicity, which is a sufficiency challenge.

{¶50} In any event, the principal issue in this case was whether appellant had knowledge of what Coffman was doing in his bedroom. While appellant does not

14

address it, there was a conflict in the testimony on this issue. Deputy Murphy testified that there was a strong odor of meth throughout the entire house and that appellant told him Coffman had brought two meth labs into the house. In contrast, appellant testified that there was no odor of meth in the house and that he never told the deputies that Coffman brought a meth lab with him. The jury, as the trier of fact, was entitled to believe Deputy Murphy and to discount appellant's testimony, which it obviously did. In doing so we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that appellant was entitled to a new trial.

{¶51} We therefore hold the state presented sufficient, credible evidence to support appellant's conviction.

{¶52} For the reasons stated in this opinion, the assignments of error are overruled. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.